UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PAUL KUHNE,

                 Plaintiff,                        07 CIV 1364(HB)(RLE)

  -against-                                    **AFFIDAVIT OF BRIAN L. FRARY IN SUPPORT OF SUMMARY JUDGMENT MOTION**

COHEN & SLAMOWITZ, LLP, and MIDLAND
FUNDING NCC-2 CORP.,

                 Defendants.
-------------------------------------------------------------X

STATE OF CALIFORNIA   )
                                  )
COUNTY OF SAN DIEGO    )

     BRIAN L. FRARY, being duly sworn, deposes and says:

1.     I have personal knowledge of the matters set forth herein and I am competent to testify thereto.

2.     I am the assistant corporate secretary of Midland Funding NCC-2 Corp. (hereinafter "NCC-2").

3.     NCC-2 is an entity that purchases defaulted debt on the secondary market.

4.     Specifically, NCC-2 purchased Plaintiff's defaulted debt.

5.     NCC-2 does not engage in any debt collection activities.

6.     NCC-2 does not have any employees.

7.     Specifically, NCC-2 did not engage in any debt collection activities with respect to the debt of Plaintiff, Paul Kuhne.

8.     NCC-2 was not licensed by the New York City Department of Consumer Affairs ("DCA") in that NCC-2 was and remains a passive debt purchaser and carries out no collection activities in the City of New York or elsewhere.

1852656.1

9. NCC-2 contracted with Midland Credit Management, Inc. ("MCM") to coordinate and carry out any appropriate collection activities in connection with plaintiff's account. Pursuant to a servicing agreement between NCC-2 and MCM, MCM is given broad powers to collect on a debt, including the power to retain legal counsel for possibly filing suit to collect the debt. Attached to this affidavit as Exhibit "A" is the servicing agreement between NCC-2 and MCM. Exhibit "A" is confidential and is subject to the Confidentiality Order signed and entered by Magistrate Judge Ellis on or about December 17, 2007. Pursuant to Paragraph 5 of the Confidentiality Order, Exhibit "A" is being filed in a sealed envelope containing the "Confidential" marking. All parties have agreed to comply with the Confidentiality Order and treat such documents according to the Order.

10. MCM in turn retained Cohen & Slamowitz, LLP ("C&S") to pursue collection activities against the Plaintiff on behalf of NCC-2.

11. MCM was in fact licensed by the DCA prior to the commencement by C&S of the collection action against the plaintiff.

12. I am aware of a letter issued by the DCA that an entity such as NCC-2 is not subject to licensing as a debt collection agency under the New York City Administrative Code.

13. It remains the understanding of NCC-2, as articulated by the DCA, that an entity such as NCC-2, which is a passive purchaser of debt, as opposed to an entity that engages in debt collection activities, is not required to be licensed by the DCA before C&S could file suit in the name of NCC-2 in one of the courts located within the City of New York.

14. MCM and C&S sent collection letters to Plaintiff.

15. NCC-2 did not send any letters to Plaintiff. In fact NCC-2 did not have any type of communication (telephonic, electronic, written, etc.) with Plaintiff.

16. All of the communication with Plaintiff was undertaken by either MCM or C&S, both of which are licensed by the DCA.

2

1852656.1

17. NCC-2 did not direct C&S to file suit in its name to collect Plaintiff's debt.

*[signature]*
BRIAN L. FRARY, ESQ.

Subscribed and sworn to before me on this 7th day of January, 2008, by Brian L. Frary, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

*[signature]*
NOTARY PUBLIC

ALICIA P. OCHOA
Commission # 1780413
Notary Public - California
San Diego County
My Comm. Expires Nov 17, 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PAUL KUHNE,

                Plaintiff,                CV-07-1364(HB)(RLE)

  -against-

COHEN & SLAMOWITZ, LLP and MIDLAND
FUNDING NCC-2 CORP.,

                Defendants.
-----------------------------------------------------------------X

## **DEFENDANTS COHEN & SLAMOWITZ, LLP and MIDLAND FUNDING NCC-2 CORP.'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, COHEN & SLAMOWITZ, LLP ("C&S") and MIDLAND FUNDING NCC-2 CORP. ("NCC-2") by and through their attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, in compliance with Local Civil Rule 56.1 set out below a statement of undisputed material facts in support of their Motion for Summary Judgment.

1. Plaintiff Paul Kuhne ("Plaintiff") incurred a debt based on purchases he made with a Citibank credit card. (Transcript of Paul Kuhne's deposition taken on November 28, 2007, pages 28, 29, 68, 93, 107, hereinafter "Kuhne Transcript").

2. Plaintiff defaulted on his debt. (Plaintiff's credit reports from TransUnion and Equifax, Exhibits "O" and "P" from Kuhne Transcript; Kuhne Transcript page 31).

3. NCC-2 is an entity that purchases and holds defaulted debt (Transcript of Brian Frary's deposition taken on November 30, 2007, pages 33, 35, 38, 47, hereinafter "Frary Transcript").

4. Plaintiff's debt was purchased by NCC-2 after he defaulted on his debt. (Frary Transcript, page 59).

5. Pursuant to a servicing agreement in place between NCC-2 and Midland Credit Management, Inc. ("MCM"), the account containing Plaintiff's debt was placed with MCM for all collection activities (Frary Transcript, pages 38, 47).

6. MCM is the sole Midland/Encore entity that engaged in collection activities with respect to Plaintiff's debt. (Frary Transcript, page 38).

7. MCM has been duly licensed by the New York City Department of Consumer Affairs ("DCA") as a debt collection agency. (Frary Transcript, page 89; MCM's licenses appended to Defendants' original motion to dismiss as Exhibit "D").

8. MCM had collection letters mailed to Plaintiff in an attempt to collect the debt. MCM's letters to Plaintiff were dated June 8, 2005; August 4, 2005; September 21, 2005; November 1, 2005; January 6, 2006; February 14, 2006 (Letters from MCM appended to Frary Transcript).

9. NCC-2 did not send any letters to Plaintiff and did not have any communications with Plaintiff. (Plaintiff's Response to Requests for Admission; Kuhne Transcript, pages 19, 20, 31, 32. 39. Frary Transcript p. 71).

10. NCC-2 was a passive purchaser of Plaintiff's debt and undertook no collection activities. (Frary Transcript, pages 81, 82).

11. NCC-2 does not engage in any collection activities. (Frary Transcript pages 73, 75)

12. Any and all communications to Plaintiff seeking to collect on Plaintiff's debt at issue were from Citibank, MCM and/or C&S. (Plaintiff's Response to Request for Admission).

1839340.1

13. Plaintiff is not in possession of any evidence that NCC-2 is anything other than a passive purchaser of debt. (Plaintiff's Response to Request for Admission).

14. DCA has issued an authoritative letter stating that entities who do not actively engage in collection activities do not need to be licensed by the DCA (Transcript of David Cohen's deposition taken on November 26, 2007, page 23, hereinafter "Cohen Transcript"; Letter from Marla Tepper, DCA General Counsel, appended to Defendants' original Motion to Dismiss as Exhibit "C").

15. When MCM's collection efforts did not result in collection, MCM hired the law firm of C&S to attempt to collect the debt by whatever means necessary based on C&S's legal judgment. (Frary Transcript, pages 79, 80, NCC-2 Responses to Request for Admission, C&S Response to Request for Admission).

16. MCM retained C&S to pursue collection activities against the plaintiff on behalf of NCC-2. (Frary Transcript, pages 79, 80).

17. C&S was at all times licensed by DCA as a debt collection agency (Frary Transcript, page 88; Cohen Transcript, page 24).

18. C&S sent collection letters to Plaintiff (Cohen Transcript, pages 70, 71; Letters from C&S to Plaintiff).

19. When C&S's initial efforts did not result in Plaintiff satisfying his obligations, C&S filed suit in the Civil Court of the City of New York, New York County. (Frary Transcript, page 81; Cohen Transcript, pages 16, 17, 18; Plaintiff's summons and amended complaint).

20. Any and all documents from the litigation in the Civil Court of the City of New York, County of New York, Index No. 33248 CVN 2006 received by Plaintiff or of which

Plaintiff is aware indicated they were prepared by the law firm of C&S. (Plaintiff's Response to Request for Admission).

21. Any and all documents from the litigation in the Civil Court of the City of New York, County of New York, Index No. 33248 CVN 2006 that were filed with the Court were filed by C&S. (Plaintiff's Response to Request for Admission).

22. No documents from the litigation in the Civil Court of the City of New York, County of New York, Index No. 33248 CVN 2006 received by Plaintiff were transmitted to Plaintiff by NCC-2. (Plaintiff's Response to Request for Admission).

23. No documents from the litigation in the Civil Court of the City of New York, County of New York, Index No. 33248 CVN 2006 of which Plaintiff is aware were drafted by NCC-2. (Plaintiff's Response to Request for Admission).

24. No documents from the litigation in the Civil Court of the City of New York, County of New York, Index No. 33248 CVN 2006 or of which Plaintiff is aware were signed by NCC-2. (Plaintiff's Response to Request for Admission).

25. No documents from the litigation in the Civil Court of the City of New York, County of New York, Index No. 33248 CVN 2006 that were filed with the Court were filed by NCC-2. (Plaintiff's Response to Request for Admission).

26. The lawsuit against Plaintiff was discontinued. (Cohen Transcript, pages 104, 105).

27. Plaintiff did not incur any actual damages as a result of the alleged violations of the FDCPA other than $1,000 that he paid to his attorney. (Plaintiff's Response to Request for Admission; Kuhne Transcript, pages 17-18, 2-28).

28. Plaintiff was not and is not cognizant of the fact that NCC-2 is not licensed by DCA. See (Kuhne Transcript, page 12).

29. The New York City Administrative Code § 20-101 states that "for the protection and relief of the public of deceptive, unfair and unconscionable practices, for the maintenance of standards of integrity, honesty and fair dealing among persons and organizations engaging in licensed activities, for the protection of the health and safety of the people of New York city and for other purposes requisite to promoting general welfare, licensing by the department of consumer affairs is a necessary and proper mode of regulation.".

30. Under Administrative Code §20-388, there is a further "legislative declaration" expounding on the need for debt collection agencies to be licensed by the DCA.

> The council hereby finds the presence of consumer related problems with respect to the practices of debt collection agencies whose sole concern is the collection of debts owed to their clients. While the majority of those engaged in this business are honest and ethical in their dealings, there is a minority of unscrupulous collection agencies in operation that practice abusive tactics such as threatening delinquent debtors, or calling such people at outrageous times of the night. These actions constitute tactics which would shock the conscience of ordinary people. Due to the sensitive nature of the information used in the course of such agency's everyday business, and the vulnerable position consumers find themselves in when dealing with these agencies, it is incumbent upon this council to protect the interests, reputations and fiscal well-being of the citizens of this city against those agencies who would abuse the privilege of operation. It is herein declared that the city should license debt collection agencies.

31. In its answer to Plaintiff's First Amended Complaint, NCC-2 plead the following affirmative defense: "Pursuant to 15 USC § 1692k, this action has been brought in bad faith and for the purpose of harassment. As such the court should award to the defendant, attorney's fees

reasonable in relation to the work expended and costs." (Midland Funding NCC-2 Corp.'s Answer to Plaintiff's First Amended Complaint, ¶ 58)

32. In its answer to Plaintiff's First Amended Complaint, C&S plead the following affirmative defense: "Plaintiff has brought his claim without conducting a good faith inquiry into the validity of his cause of action. His claim has been brought in bad faith and without substantial justification." C&S also requested that it be awarded the costs and attorneys fees incurred in its defense. (Cohen & Slamowitz, LLP's Answer to Plaintiff's First Amended Complaint, ¶ 58).

Dated: White Plains, New York
January 7, 2008

Yours, etc.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Thomas A. Leghorn
Jay A. Wechsler
Attorneys for Defendants
COHEN & SLAMOWITZ, LLP and
MIDLAND FUNDING NCC-2 CORP.
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000
File No. 00295.12368