# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PAUL KUHNE,

        Plaintiff,

    v.

COHEN & SLAMOWITZ, LLP, and
MIDLAND FUNDING NCC-2 CORP.,

        Defendants.

) <br>
) <br>
) <br>
) No. 07-cv-1364(HB)(RLE) <br>
) <br>
) <br>
) <br>
) JURY DEMANDED <br>
) <br>

**Plaintiff's Memorandum of Law
In Support of Motion for Summary Judgment**

<u>Attorneys for Plaintiff:</u>
Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York NY 10005
(212) 248-7906

Andrew G. Pizor
38 Volunteer Lane, #1-A
Greenwich CT 06830
(203) 570-4249

**Table of Contents**

Facts…………………………………………………………………………………………1

Argument……...………………………………………………………………………….5

I.     Standard of review for summary judgment…………………………………………5

II.    The FDCPA prohibits a broad range of undesirable debt-collection activities……5

III.   Elements of an FDCPA claim…………………………………………………………6

IV.  Litigation constitutes debt-collection activity……………………………………….8

V.    Collecting debts without a license violates the FDCPA…..………………………8

VI.  Summary of GBL § 349……………………………………………………….……11

VII.  Defendants violated the FDCPA by attempting to collect a debt from Plaintiff
even though NCC-2 did not have a mandatory debt-collection
license…………………………………………………………………………………12

      A.     NCC-2 and C&S are debt collectors…..………………………………....12

      B.     Retaining an agent to perform collection activities
constitutes collection activity…………………………………………………14

      C.     NCC-2 was required to obtain a
debt collection agency license from DCA…………………………………16

      D.     The Tepper letter should be disregarded…………………………………18

VIII. Filing and serving a debt-collection lawsuit without the right to do so is a
consumer-oriented misleading practice in violation of GBL § 349……………...21

IV.  Conclusion………………………………………………………………….………23

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL KUHNE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 07-cv-1364(HB) |
| | ) |
| COHEN & SLAMOWITZ, LLP, and | ) |
| MIDLAND FUNDING NCC-2 CORP., | ) |
| | ) JURY DEMANDED |
| Defendants. | ) |

### Plaintiff's Memorandum of Law
### In Support of Motion for Summary Judgment

Plaintiff Paul Kuhne submits this memorandum of law in support of his motion for

summary judgment. The undisputed facts show that Defendants, Cohen & Slamowitz, LLP

(C&S), and Midland Funding NCC-2 Corp. (NCC-2), violated the Fair Debt Collection Practices

Act (FDCPA)[1] and New York State's Deceptive Practices Act (GBL § 349),[2] by drafting, filing,

and serving Kuhne with a New York City Civil Court summons and complaint, even though

NCC-2 is not licensed to collect debts by the New York City Department of Consumer Affairs

(DCA) as required by the New York City Administrative Code (NYCAC). Filing suit to collect

a debt without a license and without pleading the licensing allegations required by New York

City law constitutes an abusive debt-collection practice.

### Facts

Defendant NCC-2 is part of an elaborate corporate structure that shifts at the whim of

---

[1] 15 U.S.C. § 1692, *et seq.*

[2] New York General Business Law § 349.

1

those who control it. Encore Capital Group, Inc. (Encore), formerly known as MCM Capital Group, Inc., is at the top of this structure and is the parent and owner of all the related entities beneath it.[3] A central part of Encore's business model is the purchase of defaulted consumer debts (also known as "charged-off debt") from different corporations for a few cents on the dollar followed by systematized attempts to collect this debt from consumers.[4] Although Encore and its subsidiaries share many of the same corporate officers,[5] Encore and most of its subsidiaries exist only on paper. Only a subsidiary known as Midland Capital Management, Inc. (MCM) has any employees or physical existence.[6] NCC-2, in contrast, has no employees, no dedicated phone numbers and no office space.[7] Anyone needing to reach NCC-2 must do so through MCM.[8]

When the events relevant to this action took place, the organizational chart of Encore showed MCM, NCC-2, and other debt-buying subsidiaries on the same row, as sister-companies, all directly beneath Encore.[9] A copy of the organizational chart is attached as Exhibit S to Brian L. Bromberg's Declaration. Since then Encore has reorganized at various times, leaving MCM as a wholly-owned subsidiary directly beneath Encore, followed by NCC-2 and others as

---

[3] Plaintiff's Statement of Undisputed Material Facts Pursuant To Local Rule of Civil Procedure 56.1 (P's SOF), ¶¶ 2, 5, 17.

[4] *Id.* at ¶¶ 8, 18; *Wahl v. Midland Credit Management, Inc.*, 243 F.R.D. 291, 293 (N.D. Ill. 2007); *see also*, Form 10-K filed by Encore with the U.S. Securities & Exchange Comm'n for the year ending December 31, 2005, at original 3-6, Bromberg Dec, Exhibit G.

[5] P's SOF, ¶ 9.

[6] An exception is Ascension Capital Group, Inc., which is not in an FDCPA-related business and is unrelated to this litigation.

[7] P's SOF, ¶ 11.

[8] *Id.*

[9] *Id.* at ¶ 6.

subsidiaries of MCM. Over time, some of the debt-buying subsidiaries were liquidated with their assets transferred to a new entity known as Midland Funding LLC.[10] NCC-2 has ceased buying debts and will soon be liquidated as well.[11]

But the Encore/MCM/NCC-2 system continues to work in the same general way now as when NCC-2 sued Kuhne. Generally, MCM, the operational part of Encore, takes nominal title to charged-off debts in the name of NCC-2 or one of Encore's other wholly-owned debt-buying subsidiaries.[12] Most of the charged-off debts are credit card debts.[13] MCM then attempts to collect the alleged consumer debts by telephone and mail.[14] When collection letters do not result in recovery, MCM regularly forwards debts to local debt-collection law firms for suit in the name of the appropriate debt-buying subsidiaries.[15] This business strategy is part of a relatively new development in the debt collection industry that too often results in abuse and violations of consumer-protection laws. Debt collectors like Encore now buy massive numbers of bad debts using complex corporate structures and subsidiaries that flood the courts with collection suits.[16] This flood of litigation is abusive because it often takes place without appropriate evidence and is filed by debt-buying subsidiaries without appropriate licensure. As debt collection tactics have evolved from the days of small collection agencies sending a few letters, courts must be even

---

[10] *Id.* at ¶ 17.

[11] *Id.*

[12] *Id.* at ¶ 8; Bromberg Dec., Exh. G.

[13] *Id.*

[14] *Id.* at ¶ 19.

[15] *Id.*

[16] *Debt Weight: The Consumer Credit Crisis in New York City and Its Impact on the Working Poor*, Anika Singh, Urban Justice Ctr. (10/2007) at 3, 7-8 (attached as Exh. M to Bromberg Dec.); *see, supra*, n.4.

more vigilant in ensuring that debt collectors, especially in their debt-buyer incarnation, do not run afoul of the FDCPA and other consumer-protection laws.

Here, Kuhne's alleged debt was purchased in NCC-2's name.[17] Purportedly, "Citibank/Associates" once owned the charged-off account.[18] MCM then sent Kuhne a number of letters informing him that NCC-2 had purchased his debt and attempting to collect the debt.[19] When the collection letters did not result in recovery, MCM then continued attempting to collect the alleged debt by forwarding the account to a local debt-collection law firm, C&S, for suit in NCC-2's name.[20] All of this was done in accordance with the "Collection Strategies" devised by Encore.[21]

MCM caused Defendants to file suit against Kuhne in the New York City Civil Court, County of New York.[22] Defendants filed the Summons and Complaint in the name of NCC-2.[23] Defendants filed and served the Civil Court Summons and Complaint against Kuhne, even though NCC-2 is not licensed as a debt collector by the DCA.[24] C&S considered the license to be "irrelevant" and made no attempt to determine whether NCC-2 was licensed or needed a license.[25] Under CPLR 3015(e), a business that is required to be licensed must allege that it is

---

[17] P's SOF, ¶ 20.

[18] *Id.*

[19] P's SOF, ¶ 22.

[20] *Id.* at ¶ 23.

[21] *See* Form 10-K filed by Encore with the SEC for the year ending December 31, 2005, at original 3-6, Bromberg Dec, Exhibit G.

[22] P's SOF, ¶ 23.

[23] *Id.* at ¶ 23, 27.

[24] *Id.* at ¶ 3.

[25] Id. at 26.

4

and include its licensing information in its complaint. Failure to do so mandates dismissal under CPLR 3211(a)(7). Because CPLR 3015(e) imposes an affirmative obligation on businesses subject to licensing to allege their licensing information, C&S had a duty to inquire as to NCC-2's licensing status and knew or should have known that it was assisting NCC-2 in violating the City's licensing laws. Kuhne hired an attorney to defend NCC-2's suit and incurred $1,000 in legal fees.[26]

## Argument

### I. Standard of review for summary judgment

A party is entitled to summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[27] "[A] bare contention that an issue of fact exists is insufficient to create a factual dispute."[28] A motion for summary judgment may be granted in whole or in part as to the various issues in the case.[29] Based on the undisputed facts set forth above, Kuhne is entitled to judgment as a matter of law on the questions of whether Defendants violated the FDCPA and GBL § 349(a).

### II. The FDCPA prohibits a broad range of undesirable debt-collection activities

The FDCPA generally prohibits the use of "any false, deceptive, or misleading

---

[26] Id. at 29.

[27] Fed. R. Civ. P. 56(c); *Penna v. Peerless Ins. Co.*, 510 F. Supp.2d 199, 203 (W.D.N.Y. 2007).

[28] *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

[29] *Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663, 667 (N.D. W.Va. 1975).

representations or means in connection with the collection of any debt."[30] The prohibition is so

significant that much of it is repeated in 15 U.S.C. § 1692e(10). Subsection 1692e includes a

non-exhaustive list of examples of the type of representations or means which the Act prohibits.

The list includes false or deceptive "implications" as well as affirmative misrepresentations. 15

U.S.C. § 1692e(1)-(16).

"At the outset, it should be emphasized that the use of any false, deceptive, or misleading

representation in a collection letter violates § 1692e regardless of whether the representation in

question violates a particular subsection of that provision."[31] The FDCPA is liberally construed

in favor of the consumer to effectuate its purposes.[32]

> Congress, through the FDCPA, has legislatively expressed a strong
> public policy disfavoring dishonest, abusive, and unfair consumer
> debt collection practices, and clearly intended the FDCPA to have
> a broad remedial scope. See S.Rep. No. 382 at 4 (1977) ("In
> addition to [the] specific prohibitions, this bill prohibits in general
> terms any harassing, unfair, or deceptive collection practice. This
> will enable the courts, where appropriate, to proscribe other
> improper conduct which is not specifically addressed."), reprinted
> in 1977 U.S.C.C.A.N. 1695, 1698.[33]

## III.    Elements of an FDCPA claim

The FDCPA has only three basic elements in order to state a cause of action: (1) the

plaintiff is the consumer, (2) the defendant collecting the "debt" is a "debt collector" as defined,

---

[30] 15 U.S.C. § 1692e.

[31] *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them").

[32] *Cirkot v. Diversified Financial Systems, Inc.*, 839 F. Supp. 941, 944 (D. Conn. 1993) (Cabranes, J.).

[33] *Hamilton v. United Health Care of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002).

and (3) the defendant has engaged in any act or omission in violation of the prohibitions or requirements of the law.[34]

a) **Consumer**: A "consumer" is "any natural person obligated or allegedly obligated to pay any debt."[35]

b) **Debt**: The "debt" must be an "obligation or alleged obligation . . . to pay money arising out of a transaction . . . primarily for personal, family, or household purposes . . . ."[36]

c) **Debt Collector**: A "debt collector" is "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[37]  Federal courts have consistently held that purchasers or assignees of defaulted debt that collect debt for themselves are debt collectors under the FDCPA.[38]  The test of whether a purchaser of defaulted debt is a debt collector under the FDCPA is whether it had ["acquired [the] debt after it had already gone into default with [the original creditor]."[39]

---

[34] *Kolker v. Duke City Collection Agency*, 750 F. Supp. 468, 469 (D.N.M. 1990); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 175-76 (W.D.N.Y. 1988); *Withers v. Eveland*, 988 F. Supp. 942, 945 (E.D. Va. 1997); *Whatley v. Universal Collection Bureau, Inc.*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981).

[35] 15 U.S.C. § 1692a(3).

[36] 15 U.S.C. § 1692a(5).

[37] 15 U.S.C. § 1692a(6).

[38] *See Farber v. NP Funding II L.P.*, 1997 WL 913335, 1997 U.S. Dist. LEXIS 21245 (E.D.N.Y. Dec. 9, 1997); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000); *Kimber v. Federal Fin. Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987).

[39] *Rice v. Palisades Acquisition XVI, LLC*, No. 07 C 4759, 2007 WL 4522617 (N.D. Ill. Dec. 18, 2007); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir.2003); *See Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 85 (2d Cir. 2003) (discussing default).

## IV. Litigation constitutes debt-collection activity

The United States Supreme Court, the Second Circuit, and the District Courts in New York have all found litigation to be a form of debt collection governed by the FDCPA.[40] In so concluding, the courts have looked to the plain meaning of the term "debt collection" to determine that litigation constitutes a debt collection practice where the purpose of the litigation is to collect a consumer debt. "[A]ll judicial proceedings" regarding consumer debts fall within the scope of debt collection activities.[41]

## V. Collecting debts without a license violates the FDCPA

Conduct that violates state or local law also violates the FDCPA's prohibition of deceptive practices.[42] Where the law requires debt collectors to be licensed, collecting debts without a license violates the FDCPA.[43] The New York City Administrative Code requires debt collectors to be licensed. [44] Debt collectors must also affirmatively allege the details of their

---

[40] *Heintz v. Jenkins*, 514 U.S. 291, 297 (1995) (stating, in the context of interpreting FDCPA, "litigating . . . seems simply one way of collecting a debt."); *Goldman v. Cohen*, 445 F.3d 152, 155 (2d Cir. 2006) (finding "a consumer debt collector's initiation of a lawsuit in state court seeking recovery of unpaid consumer debts is" governed by the FDCPA); *Farber*, 1997 U.S. Dist. LEXIS 21245 at *15 (holding that "[d]espite [debt buyer's] contention, litigation is one form of debt collection and is governed by the FDCPA.").

[41] *Fox v. Citicorp Credit Services, Inc*, 15 F.3d 1507, 1515 (9th Cir. 1994).

[42] *Veach v Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003); *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 448 (8th Cir. 2001) ("The FDCPA prohibits, inter alia, the use of debt collection practices that violate state law").

[43] *Williams v. Goldman & Steinberg, Inc.*, No. CV-03-2132 (DGT), 2006 WL 2053715, *1 (E.D.N.Y. July 21, 2006); *Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404, 1415 (D. Conn. 1990) (finding lack of license violated 15 U.S.C. §§ 1692e(5), 1692f, 1692e in general, and 1692e(10)). *Sibley v. Firstcollect, Inc.*, 913 F.Supp. 469, 471 (M.D.La.,1995); *Russey v. Rankin*, 911 F.Supp. 1449, 1458-59 (D.N.M. 1995); *Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1451-52 (D. Nev. 1994) (relying on *Gaetano*).

license in the complaint whenever they file suit to collect on a debt.[45]

Here, Defendants violated at least 15 U.S.C. §§ 1692e(5) ("action that cannot legally be taken"), 1692e(9) (misrepresentation of document's state authorization or approval), and arguably several other subsections. A practice is deceptive if it has the tendency or capacity to deceive.[46] Omission of a material fact (such as that a collection agency is not licensed to collect) also constitutes misrepresentation under common law (Restatement of Torts (Second) §§ 529, 551) and deception under the Federal Trade Commission Act of 1934.[47] Such an omission of a material fact also leads to the type of "implication" repeatedly barred by the FDCPA. And by requiring an affirmative allegation of licensing, the state legislature has made clear its belief that licensing is material.[48]

Section 1692f provides that "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Like 15 U.S.C. § 1692e, this section lists certain types of conduct, "[w]ithout limiting the general application of the foregoing." The practice of unlicensed collection activity is not only a deceptive or misleading means within §1692e, but is also "unfair" under §1692(f) because it is within "at least the penumbra" of some common law, statutory "or other established concept" of unfairness.[49] Unfairness depends on "(1) whether the

---

[44] NYCAC § 20-490. This section states: "It shall be unlawful for any person to act as a debt collection agency without first having obtained a license in accordance with the provisions of this subchapter, and without first being in compliance with all other applicable law, rules and regulations."

[45] CPLR 3015(e).

[46] *FTC v. Algoma Lumber Co.*, 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655 (1934); *Charles of the Ritz Distributors Corp. v. FTC*, 143 F.2d 676, 680 (2d Cir. 1944).

[47] *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227, 239 (2d Cir. 1967); *Bailey Employment System, Inc. v. Hahn*, 545 F. Supp. 62, 67 (D. Conn. 1982), *aff'd*, 723 F.2d 895 (2d Cir. 1983).

[48] *See* CPLR 3015(e).

[49] *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1972).

practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by *statutes*, the common law, or otherwise - whether, in other words, it is within at least the penumbra of some common-law, *statutory*, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."[50]

For a collection agency to continue to collect in a city where it is not licensed fits within the concepts of "unethical, oppressive, or unscrupulous." Indeed, under the specific provisions of the NYCAC, unlicensed collection agency activity is punishable by a penalty of $700 to $1,000 for each violation and, in case of repeated, multiple or persistent violations, the collector may be responsible for the cost of the DCA's investigation.[51] Substantial injury to consumers results from New York City's inability to investigate, regulate, or protect its citizens from these defendants' serious and persistent substantive violations.[52] The recent explosion of massive debt-buying operations like Encore, and its subsidiaries, has led to heightened interest on the part of the DCA and the State Assembly, leading to public hearings.[53] Competitors who comply with licensing laws and New York City's collection standards are at a competitive disadvantage with these scofflaw defendants like NCC-2 who refuse to even subject themselves to the City's regulatory regime. One of the express purposes of the FDCPA is "to insure that those debt

---

[50] Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking. 29 Fed. Reg. 8355 (1964) (emphasis added).

[51] NYCAC § 20-494, "Penalties."

[52] *See* NYCAC § 20-488, "Legislative Declaration."

[53] Public hearings on debt-collection practices were held before the DCA on June 12, 2006, and before the New York State Assembly Standing Committee on Consumer Affairs and Protection on October 24, 2006.

collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."[54]

## VI.    Summary of GBL § 349

Under General Business Law § 349(a), deceptive acts or practices in the conduct of any business conducted in New York State are unlawful.[55]  The essential elements of a cause of action alleging consumer fraud in violation of GBL § 349 are that the defendant engaged in a consumer-oriented misleading practice and that the plaintiff was injured thereby.[56]  Under GBL § 349(h), proving a willful or knowing violation would entitle Kuhne not only to actual damages, but to an additional award up to $1,000.[57]

Furthermore, although there is no private right of action for violations of the New York State debt-collection statute, GBL Article 29-H, the state statute can be used to illustrate what constitutes a deceptive act under GBL § 349.[58]  GBL Article 29-H prohibits improper debt collection practices and in § 601 provides "No principal creditor... shall ... 8. Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist...."

---

[54] 15 U.S.C. § 1692(e).

[55] *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 287-88 (1999).

[56] *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d at 320 (1995).

[57] GBL § 349(h).

[58] *See I.F.C. Personal Money Managers, Inc. v. Vadney*, 133 Misc2d 841, 508 N.Y.S.2d 845 (S.Ct. Albany Cty. 1986), and *In re Scrimpsher*, 17 B.R. 999 (Bankr. N.D.N.Y. 1982).

11

A violation of the statute is a misdemeanor,[59] and gives rise to a private lawsuit for damages sustained by the debtor.[60]

## VII. Defendants violated the FDCPA by attempting to collect a debt from Plaintiff even though NCC-2 did not have a mandatory debt-collector license

Defendants violated § 1692e(5) ("action that cannot be legally taken") and § 1692e(9) (misrepresentation of document's state authorization or approval) of the FDCPA by attempting to collect a debt from the Plaintiff even though NCC-2 was not licensed to engage in debt collection activities in New York City. NCC-2 is a debt collector under the FDCPA and N.Y.C. Administrative Code because it is in the business of purchasing consumer debts that are already in default and then filing lawsuits in its own name, to collect from consumers.[61] Cohen & Slamowitz filed a suit against the Plaintiff for NCC-2 without any regard to whether NCC-2 was unlicensed. Cohen & Slamowitz knew or should have know NCC-2 was unlicensed because CPLR 3015(e) required the complaint to affirmatively allege the details of NCC-2's license. Because NCC-2 lacked the requisite license, the lawsuit was an action that could not be legally taken. Attempting to collect the debt by filing the suit falsely implied that NCC-2 was authorized by the DCA to collect debts.

### A. NCC-2 and C&S are debt collectors

---

[59] GBL § 602.

[60] *I.F.C. Personal Money Managers, Inc.*, 133 Misc2d at 844, 508 N.Y.S.2d at 847; *In re Scrimpsher*, 17 B.R. 999 at 1017.

[61] P's SOF at ¶¶ 33-35.

Both defendants are "debt collectors" within the definition of the FDCPA and the N.Y. City Administrative Code. Cohen has admitted it is a debt collector.[62] While NCC-2 denies that it is a debt collector, NCC-2's activities make apparent that it is a "debt collector" and "debt collection agency" within the definition of those terms under federal and local law. NCC-2 is in the business of acquiring charged-off consumer debt portfolios at a discount from the original face values.[63] NCC-2 has purchased over a million of defaulted consumer accounts and C&S has, in New York County alone, filed over 800 suits in NCC-2's name between February 2006 and October 2007.[64] Including those suits filed by C&S, NCC-2 has filed over 10,000 suits in its name in the four counties of New York City since January 2006. [65]As defined in 15 U.S.C. § 1692a(5), a "debt" is an obligation to pay money. NCC-2 was the plaintiff in the lawsuit that C&S filed against Kuhne for the purpose of obtaining payment on the Citibank/Associates debt. An entity that purchases defaulted debt and collects the debt for itself is a debt collector.[66] The act of suing Plaintiff on the debt is, in itself, a collection activity that shows NCC-2 is a debt collector.[67]

The fact that the debt is in default at the time it is assigned is a crucial factor in evaluating whether an assignee is a debt collector. "[T]he FDCPA recognizes that one who acquires debt merely for collection purposes is 'acting more like a debt collector' than a creditor; thus, the Act

---

[62] *Id.* at ¶ 4.

[63] *Calkins v. Midland Funding NCC-2 Corp.*, 412 F. Supp. 2d 699, 701 (W.D. Mich. 2006).

[64] *See Farber,* 1997 U.S. Dist. LEXIS 21245 at *5 (describing debt buyer's litigation activities as indication that it "engages in some debt collection").

[65] P's SOF at ¶¶ 33-35.

[66] *Centurion*, 14 Misc.3d at 566. *See also Commercial Service of Perry, Inc. v. Fitzgerald*, 856 P.2d 58 (Colo. Ct. App. 1993) (interpreting state statute defining debt collectors to be consistent with FDCPA and to include assignees of defaulted debt which collect for themselves).

[67] *See Fox*, 15 F.3d at 1515 (holding "all judicial proceedings" are within scope of FDCPA).

treats assignees of debt 'as debt collectors if the debt sought to be collected was in default when acquired by the assignee.'"[68] Congress intentionally made the definition of "debt collector" broad enough to includes assignees, such as NCC-2, because such assignees, like other non-creditor collectors, lack any incentive to avoid abusive tactics.[69] The FDCPA should be liberally construed to achieve the goal of eliminating abusive collection practices.[70] Encore's corporate structure should not be allowed to obscure the common-sense conclusion that NCC-2's sole purpose and primary activity is the collection of defaulted debts.

## B. Retaining an agent to perform collection activities constitutes collection activity

The fact that NCC-2 acted through agents, including MCM and C&S, does not allow NCC-2 to disclaim responsibility for their misconduct because NCC-2 is liable for the acts of its agents. "Congress intended the acts of an attorney to be imputed to the client on whose behalf they are taken."[71] Additionally, many courts have "utilize[d] agency principles to make a principal vicariously liable for the acts of his authorized or apparent agent under the FDCPA."[72] Simply stated, "[i]f a company buys a defaulted debt, it . . . may be liable for its own debt collection activities *and the debt collection activities of its agents.* . . . As a matter of logic, when such a company collects debts only through the use of agents, the actions of its agents can be

---

[68] *Hernandez v. Midland Credit Management, Inc.*, 2007 WL 2874059, *7 (N.D.Ill. 2007) (quoting *Schlosser*, 323 F.3d at 536).

[69] *Id. See Kimber* at 1486 (discussing legislative history).

[70] *Cirkot v. Diversified Financial Systems, Inc.*, 839 F. Supp. 941, 944 (D. Conn. 1993).

[71] *Fox*, 15 F.3d at 1516.

[72] *Alger v. Ganick, O'Brien & Sarin*, 35 F. Supp. 2d 148, 153 (D. Mass. 1999) (citing various cases); *see also Farber v. NP Funding II*, 1997 U.S. Dist. LEXIS 21245 at *15 (E.D.N.Y. December 9, 1997) ("If FGB Realty was acting as NP Funding's agent, FGB Realty's debt collection activities should be considered when determining whether or not NP Funding is a debt collector.").

14

considered in determining whether or not the company regularly collects debts and, thus, is liable for those actions of its agents."[73]

Before Defendants filed suit against Kuhne, he received a series of letters from MCM purporting to collect on NCC-2's behalf.[74] Had Kuhne failed to answer the Civil Court Complaint in time, Defendants would have moved for a default judgment. When moving for a default judgment, Defendants would have attached an Affidavit of Fact signed by employee of MCM, a company "engaged by plaintiff [*i.e.*, NCC-2] to service the account."[75] Attached as Exhibit L to the accompanying Declaration of Brian L. Bromberg are copies of a few of the hundreds of affidavits used by Defendants and MCM to enter default judgments purportedly on NCC-2's behalf. Under agency principles, MCM's debt collection activities can be ascribed to NCC-2.

Indeed, the relationship between MCM and Plaintiff goes beyond that of principal-agent. SEC filings indicate that both MCM and NCC-2 are wholly-owned subsidiaries of Encore, formerly MCM Capital Group, Inc.[76] A recent federal court opinion from the Northern District of Illinois describes the relationship between NCC-2 and MCM.[77] MCM regularly collects debts held by Encore's subsidiaries, including Defendant NCC-2.[78]

---

[73] *Farber v. NP Funding II*, 1997 U.S. Dist. LEXIS 21245 at *15, n. 7 (E.D.N.Y. December 9, 1997) (emphasis added).

[74] First Amended Complaint, ¶ 35. Copies of the letters are attached to the Kuhne Dec. as Exhibit A.

[75] Bromberg Dec, Exhibit L.

[76] *See* the "List of Subsidiaries" for Encore attached as Exhibit 21 to Encore's Form 10-K for the fiscal year ending December 31, 2006, Bromberg Dec, Exhibit G.

[77] *See Wahl*, 243 F.R.D. 291; *see also Hernandez v. Midland Credit Management, Inc.*, 2007 WL 723561, 2007 U.S. Dist. LEXIS 16054 (N.D. Ill. March 6, 2007).

[78] *Id.*

Whether Encore, MCM or C&S is licensed is immaterial – the NYCAC makes it "unlawful for *any* person to act as a debt collection agency without first having obtained a license...."[79] Because Defendants concede and cannot dispute that NCC-2 has engaged an agent to conduct collection activities, exclusive of litigation in which Plaintiff engages directly, its argument that it need not be licensed under NYCAC § 20-490 must fail.

This interpretation would hold even if this Court were to find the Tepper letter, discussed below, to be persuasive. Because the Tepper letter only purports to excuse a debt buyer that does not engage in or direct any debt-collection activity, NCC-2's use of affiliates to evade the DCA's licensing requirements would not pass muster.

## C.     NCC-2 was required to obtain a debt collection agency license from DCA

NCC-2 is a debt collection agency under New York City's Administrative Code and, therefore, should have obtained a license before suing Kuhne. The New York City Civil Court case of *Centurion Capital Corp. v. Druce* is strikingly relevant to the present this action.[80] Centurion, a buyer of defaulted debt, filed suit in its own name against a consumer to recover a debt.[81] The consumer counterclaimed and sought to dismiss by asserting Centurion was an unlicensed debt collector under the N.Y.C. Administrative Code. Centurion argued it was not a debt collector because it did "not collect debts owed or due to another . . . [and] only collects debt due itself."[82] Finding that New York's definition of debt collection agency should be interpreted consistently with the FDCPA's definition of "debt collector," the court rejected

---

[79] NYCAC § 20-490.

[80] 14 Misc.3d 564, 828 N.Y.S.2d 851 (2006).

[81] *Id*. at 564-65.

[82] *Id*. at 565 (Court summarizing Centurion's argument).

Centurion's argument.[83] Relying on federal case law and an administrative decision from the N.Y. City Department of Consumer Affairs, the *Centurion* court held that the determining factor was whether the debt was in default at the time of assignment, even where the assignee collects the debt for itself.[84] As further explained below, the Tepper letter is an inappropriate attempt to overrule more authoritative case law and, for many reasons, is not entitled to deference from this Court.

Moreover, the DCA has issued an administrative decision holding that debt buyers, like NCC-2, must be licensed as debt collectors under the NYCAC.[85] Other New York City Civil Courts have reached the same conclusion that debt buyers must be licensed to file suit against consumers in the New York City courts.[86] As the Civil Court Judge in *PRA III, LLC v. McDowell* explained, "[t]he fact that [a plaintiff] has purchased the debt does not change the requirement that [the plaintiff] be licensed."[87] Nothing in the actions of the DCA or the Civil Court Judges is new. Since 1983, New York State law has required that a complaint arising from

---

[83] *Id.* at 565-66.

[84] *Id.* at 567-68; accord *Rushmore Recoveries, XI, LLC v. Morningstar*, slip op., No. 19884-06 (Moulton, J.) (N.Y. City Civ. Ct., N.Y. Co., July 17, 2007) (attached as Exh. Q to Bromberg Dec.). Another New York City Civil Court decision, *MRC Receivables Corp. v. Morales*, has found that debt buyers need not be licensed. *MRC Receivables Corp. v. Morales*, slip op., No. 64334/06 (Danziger, JCC) (N.Y. City Civ. Ct., Bronx Co., May 7, 2007) (attached as Exh. R to Bromberg Dec.). The *MRC* decision, however, lacks the extensive analysis in *Centurion* and is based solely on the Tepper opinion letter described below. Furthermore, *MRC* is also on appeal to the Appellate Term and has been fully briefed and argued. Bromberg Dec., ¶ 30.

[85] *Dep't of Consumer Affairs v. Asset Acceptance*, LLC, Violation No. PL1044927 (July 24, 2006, and on appeal, February 23, 2007) (both the original Decision and Order and the Appeal Determination are attached to the accompanying Bromberg Dec as Exhibits N and O).

[86] *PRA III, LLC v. MacDowell*, No. 40841/2004, 15 Misc.3d 1135(A) (N.Y. City Civ. Ct., Richmond Co., Straniere, J. Mar. 16, 2007); *Centurion Capital Corporation a/a/o Aspire Card v. Druce*, 14 Misc.3d 564, 828 N.Y.S.2d 851 (N.Y. City Civ. Ct., NY County, Kern, J. 2006); *Morningstar, supra*, slip op., No. 19884-06 (Moulton, J.).

[87] *Id.*

17

the plaintiff's conduct of business which is required to be licensed must state the license name, number, and issuing governmental agency.[88] And, where the plaintiff fails to allege the license in the complaint, its cause of action must be dismissed.[89]

Federal courts, including district courts in this Circuit, have held that a collection agency that collects local debts in the forum state without a license as required by the state violates 1692e. Recently, Judge David G. Trager, of the Eastern District of New York, relying upon the leading state-licensing case in this Circuit, *Gaetano*,[90] held that sending collection letters into the City of New York, without being licensed by the DCA, violates the FDCPA.[91] Thus, NCC-2's effort to collect a debt in New York City without being licensed by the DCA violated the FDCPA. There is no dispute that NCC-2 is unlicensed. Therefore, if the Court agrees that NCC-2 should have been licensed under NYCAC § 20-490, the Court should conclude that NCC-2 violated the FDCPA by filing suit as an unlicensed debt collector.

### D. The Tepper letter should be disregarded

Although Marla Tepper, General Counsel of the DCA, has issued an informal opinion

---

[88] CPLR 3015(e).

[89] CPLR 3211(a)(7); *see B&F Bldg. Corp. v. Liebig*, 76 N.Y.2d 689, 564 N.E.2d 650, 563 N.Y.S.2d 40 (1990) (the burden of pleading a license is on the party required to be licensed); *Matilda Constr., Inc. v. 420 East 72nd St. Tenants Corp.*, 259 A.D.2d 374, 687 N.Y.S.2d 120 (1st Dep't 1999) (motion to dismiss granted where complaint did not allege that plaintiff possessed the required license); *Morningstar, supra*, slip op., No. 19884-06 (Moulton, J.).

[90] 774 F. Supp. 1404 (D. Conn. 1990).

[91] *Williams v. Goldman & Steinberg, Inc.*, No. CV-03-2132(DGT), 2006 WL 2053715 (EDNY, Trager, J. July 21, 2006) ("I conclude that there was a violation of the FDCPA because the defendant did not have a license when it sent the Collection Letter to a New York City resident, as required by regulations of the City of New York. New York, NY, Admin Code tit. 20, ch. 2, § 20-490; *see Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404, 1414-15 (D.Conn. 1990).")

letter[92] (the "Tepper letter") asserting that "passive" debt buyers need not be licensed, this letter is non-binding and should be disregarded.[93] The Tepper letter constitutes an informal advisory opinion that is not binding on any court.[94] It was not the product of any formal rule-making process and there was no opportunity to submit argument or opposing opinions before its issuance.[95] Unlike an adjudication resulting from a judicial or administrative hearing, the Tepper letter did not result from the adversarial process and is not informed by argument on the matter from interested parties.[96] The Court is amply able to interpret statutes and case law.[97] Where "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight."[98]

Additionally, the Tepper letter contradicts existing case law and the DCA's own

---

[92] A copy of the Tepper letter is attached to the accompanying Bromberg Dec as Exhibit P.

[93] *See Adam Marigliano, LMT v. New York Central Mutual Fire Ins. Co.*, 374454 CVN 2005, 2007 NY Slip Op 27104, 2007 NY Misc. LEXIS 848 (N.Y. City Civ. Ct. March 12, 2007); *see also State Farm Mut. Auto Ins. Co. v. Mallela*, 372 F.3d 500, 506 (2d Cir. 2004); *Park Radiology P.C. a/a/o Torres v. Allstate Ins. Co.*, 2 Misc.3d 621, 626 n. 2, 769 N.Y.S.2d 870, 874 n. 2 (N.Y. City Civ. Ct. 2003).

[94] *See Marigliano v. New York Cent. Mut. Fire Ins. Co.*, 15 Misc.3d 766, 774, 831 N.Y.S.2d 697 (N.Y. City Civ. Ct., 2007) (rejecting Insurance Department's Opinion Letter as "informal and not binding on any court.")

[95] *See Midwood Total Rehab. Medical, P.C. v. State Farm Mut. Auto. Ins. Co.*, 16 Misc.3d 480, 842 N.Y.S.2d 257, 259 (N.Y. Dist. Ct., 2007) (criticizing Insurance Department for issuing discredited opinion letter and noting lack of "proper rule-making process").

[96] *See Lichtman v. Grossbard*, 73 N.Y.2d 792, 795, 537 N.Y.S.2d 19, 21 (1988) (applying principle of adhering to the ideal of the adversarial process).

[97] *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

[98] *Kurcsics v. Merchants Mutual Ins. Co.*, 49 N.Y.2d 451, 459, 426 N.Y.S.2d 454, 458 (1980).

administrative rulings on this subject. Relevant case law, including the *Centurion Capital Corporation* and *PRA III* cases cited above, does not draw any distinction between debt buyers that pursue "activities traditionally associated with debt collection such as sending demand letters…or making telephone calls" and those that purport not to engage in such activity.[99] Similarly, the DCA's leading administrative Decision and Order on this matter, which has been upheld on administrative appeal, makes no such distinction.[100] Moreover, the DCA's administrative appellate decision *relies* upon the Civil Court decision in *Centurion Capital Corporation*,[101] in holding that

> Interpretation of the statute to exclude the respondent's activity [of buying defaulted debt for purposes of collection] would mean that businesses could circumvent the legislative purpose and deprive the public of the protection the statute was intended to afford simply by purchasing debt before trying to collect it. *See Centurion Capital Corporation a/a/o Aspire Card v. Robert Druce*, Index No. 29303/06 (Dec 21, 2006) (finding that a purchaser of defaulted debt whose principal purpose is collection of that debt is a debt collection agency within the meaning of Administrative Code Section 20-489).[102]

Thus, the DCA's own interpretation of the statute matches the Civil Court's. By contradicting the DCA's interpretation and consistent case law, the Tepper letter highlights the dangers of relying upon an informal opinion letter. The letter purports to interpret a statute and

---

[99] *Centurion Capital Corporation*, 14 Misc.3d 564, 828 N.Y.S.2d 851; *PRA III, LLC*, 15 Misc.3d 1135(A), 2007 WL 1429026.

[100] *Dep't of Consumer Affairs v. Asset Acceptance*, LLC, Violation No. PL1044927 (July 24, 2006, and on appeal, February 23, 2007) (both original Decision and Order and the Appeal Determination are attached to the accompanying Bromberg Dec as Exhibits N and O, respectively).

[101] 828 N.Y.S.2d 851.

[102] Bromberg Dec, Exhibit O.

overturn *Centurion Capital Corporation*[103] and *PRA III, LLC*,[104] however, for the aforementioned reasons, this Court can disregard it.

A recent Appellate Division case addressing an opinion letter from the Superintendent of Insurance shows that courts should be wary of according deference to informal interpretations.[105] In *LMK Psychological Services, P.C. v. State Farm Mutual Automobile Insurance Co.*, the Appellate Division held that an agency's interpretation of its own regulations is not entitled to deference "where . . . the interpretation conflicts with the explicit language of the controlling statute[,]" "undermines the goal of" the law at issue, or is contrary to settled case law.[106] This decision makes clear that the Tepper letter is neither binding nor even a persuasive interpretation of the law. Because the Tepper letter has no precedential value, no basis in statute or case law, and contradicts the DCA's own interpretation of the statute and case law, the letter does not merit any deference from this Court.[107]

## VIII.  Filing and serving a debt-collection lawsuit without the right to do so is a consumer-oriented misleading practice in violation of GBL § 349

Defendants violated GBL § 349(a) by filing and serving a lawsuit against Kuhne without a legal right to do so. This meets the first element of a "consumer-oriented misleading practice." By filing and serving the lawsuit, Defendants misrepresented to Kuhne that they had the legal

---

[103] 14 Misc.3d 564, 828 N.Y.S.2d 851.

[104] 15 Misc.3d 1135(A), 2007 WL 1429026.

[105] *LMK Psychological Services, P.C. v. State Farm Mutual Automobile Insurance Co.*, 2007 WL 4531300 (N.Y.A.D. 3 Dept.) (Dec. 27, 2007).

[106] *Id.*, 2007 WL 4531300, *2 (N.Y.A.D. 3 Dept.) (Dec. 27, 2007); *Marigliano at 774; Midwood Total Rehab. Medical, P.C. v. State Farm Mut. Auto. Ins. Co.*, 16 Misc.3d 480, 842 N.Y.S.2d 257-259 (N.Y. Dist. Ct., 2007) ("The Insurance Department's Opinion Letter of October 8, 2003 is informal and not binding on any court.")

[107] *Kurcsics*, 49 N.Y.2d at 459, 426 N.Y.S.2d at 458.

right to do so. By further failing to abide by their affirmative obligation under CPLR 3015(e) to allege their licensing information, Defendants appear to have "willfully or knowingly" violated GBL § 349 in their suit against Kuhne. The second element of a GBL § 349 claim is an "injury." As set forth in Plaintiff's Statement of Facts, Defendants' conduct caused Plaintiff to suffer emotional distress and anxiety,[108] and to incur attorney fees[109] in the course of defending a Civil Court action that never should have been filed.[110]

In *I.F.C. Personal Money Managers, Inc. v. Vadney*,[111] a creditor violated GBL § 601 by threatening a debtor with enforcement of a non-existent right, i.e., collection of attorney fees, thereby giving right to a private cause of action under GBL § 349.[112] Likewise, in *In re Scrimpsher*,[113] the Court held that an attempt by a creditor to collect bad check "services charges" in the absence of a legal obligation to pay such charges constitutes a deceptive act, giving rise to a violation under GBL § 349.[114]

In this case, by filing and serving a Civil Court Summons and Complaint without the appropriate license, and, therefore, without the right to do so, Defendants misrepresented their right to bring suit against Kuhne. Even though they had no right to sue, Defendants brazenly went ahead and did so anyway. Plaintiff has suffered actual damages as a direct result.

---

[108] First Amended Complaint, ¶¶ 55-56.

[109] P's SOF, ¶ 29

[110] *Id.*

[111] *I.F.C. Personal Money Managers, Inc.*, 133 Misc2d 841, 508 N.Y.S.2d 845.

[112] 133 Misc2d at 844, 508 N.Y.S.2d at 847.

[113] *In re Scrimpsher,* 17 B.R. 999.

[114] *Id.* at 1017.

## Conclusion

Plaintiff respectfully requests that the Court enter an Order: (a) granting summary judgment in his favor on all counts of the amended complaint on the grounds that Defendants violated the FDCPA and GBL § 349 by pursuing a debt collection lawsuit for an unlicensed debt collector; and (b) granting such other and further relief as the Court deems necessary and proper.

Dated: New York, New York
January 7, 2008

/s/ Brian L. Bromberg
Brian L. Bromberg
One of Plaintiff's Attorneys

Attorneys for Plaintiff:
Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York NY 10005
(212) 248-7906

Andrew G. Pizor
38 Volunteer Lane, #1-A
Greenwich CT 06830
(203) 570-4249