UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| PAUL KUHNE, | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) Civil Action No.: |
|  | ) 07-CV-1364 (HB) (RLE) |
| COHEN & SLAMOWITZ, LLP and MIDLAND FUNDING NCC-2 CORP., | ) |
|  | ) |
| Defendants | ) |

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................ii

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT....................................................................................................2

POINT I-GRANTING SUMMARY JUDGMENT TO PLAINTIFF IS
INAPPRPROPRIATE IN THIS ACTION ........................................................2

POINT II- NCC-2 IS NOT A DEBT COLLECTION AGENCY UNDER THE NEW
YORK CITY ADMINSITRATIVE CODE.........................................................5

POINT III- PLAINTIFF'S CLAIM THAT LITIGATION BY ITSELF CONSTITUTES
COLLECTION ACTIVITY IS MISGUIDED......................................................9

POINT IV- DEFENDANTS DID NOT VIOLATE THE FDCPA.............................10

POINT V- THERE IS NO VIOLATION OF GBL § 349.....................................15

CONCLUSION.................................................................................................18

## TABLE OF AUTHORITIES

### Section of the United States Constitution

Art. I, §8, cl. 3…………………………………………………………..............14, 15

### Codes , Statutes and Rules

15 U.S.C. § 1692 et. seq. (Fair Debt Collection Practices Act)…1, 2, 5, 6, 8, 9, 10, 11, 12, 13, 14, 17, 18

General Business Law § 349………………………...……………………………………1, 15, 16

New York City Administrative Code §20-489…………………………………………1, 2, 6, 7, 8

Local Rule 56.1……………………………………………………………………2, 4, 5

Federal Rule of Civil Procedure § 56(c)……………………………………..............2, 3

Federal Rule of Civil Procedure § 56(e)…………………………………………...............3

New York City Administrative Code § 20-490……………………………….………………...5

New York City Administrative Code §20-488………………………………………...……8, 10, 11

Federal Rule of Civil Procedure § 56…………………………………………….......................4

New York Business Corporation Law § 1312(a)..………………………………..…11, 12, 13, 14

### United States Supreme Court Cases

*Adickes v. Kress & Co.,*
398 U.S. 144, 157 (1970)………………………………………………………..…...3

*Anderson v. Liberty Lobby,*
477 U.S. 242 (1986)………………………………………………………...……...3

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)…………………………………………………………………3

*Heinz v. Jenkins,*
514 U.S. 291 (1995)……………………………………………………………...…10

*United States v. Diebold, Inc.,*
   369 U.S. 654, 655 (1962)................................................................3


## Second Circuit Court of Appeals Cases

*Bentley v. Great Lakes Collection Bureau,*
   6 F.3d 60 (2d Cir. 1993)...............................................................11

*Broder v. Cablevision Systems Corp.,*
   329 F.Supp.2d 551, affirmed 418 F.3d 187 (2nd Cir. 2005)....................16

*Chambers v. TRM Copy Ctrs. Corp.,*
   43 F.3d 29, 36 (2d Cir. 1994) .........................................................3

*D'Amico v. City of New York,*
   132 F.3d 145 (2nd Cir. 1998)..........................................................3

*Holt v. KMI-Continental, Inc.,*
   95 F.3d 123, 129 (2d Cir.1996)......................................................3, 4

*Heyman v. Commerce & Indus. Ins. Co.,*
   524 F.2d 1317, 1320 (2d Cir. 1975)..................................................3

*LaFond v. Gen. Physics Servs. Corp.,*
   50 F.3d 165, 171 (2d Cir. 1995).......................................................3

*Patrick v. LeFevre,*
   745 F.2d 153, 158 (2d Cir. 1984).....................................................3

*Town of Southold v. Town of East Hampton,*
   477 F.3d 38 (2nd Cir. 2007)...........................................................15


## United States District Court Cases

*A.I. Int'l Corporate Holdings, Inc. v. Surgicare, Inc.,*
   2003 WL 22705128, (S.D.N.Y. 2003)...............................................12

*Armstrong v. Tucker,*
   2000 WL 33593292 (S.D.N.Y. 2000)..................................................4

*Azuma N.V. v. Sinks,*
   646 F.Supp. 122, 125 (S.D.N.Y.1986)..............................................13

*Brentwood Pain & Rehabilitation Services, P.C. v. Allstate Insurance Company,*
  508 F. Supp.2d 278 (S.D.N.Y. 2007)...................................................................8

*Carvalho v. Mel S. Harris & Assocs.,*
  2004 WL 1555193 (E.D.N.Y. 2004).........................................................12, 13, 14

*Conboy v. AT & T Corp.,*
  84 F.Supp.2d 492 (S.D.N.Y. 2000)...........................................................16

*Gear, Inc. v. L.A. Gear California, Inc.,*
  637 F.Supp. 1323, 1333 (S.D.N.Y.1986)......................................................4

*Grant v. The City of New York,*
  1992 WL 77562, (S.D.N.Y. 1992).............................................................4

*Howard v. City of New York,*
  302 F.Supp.2d 256, 259 (S.D.N.Y. 2004).....................................................4

*In re Evergreen Mut. Funds Fee Litigation,*
  423 F.Supp.2d 249 (S.D.N.Y. 2006)..........................................................15

*Leider v. Ralfe,*
  387 F.Supp.2d 283 (S.D.N.Y. 2005)..........................................................17

*Mediterranean Shipping Co., (USA), Inc. v. Scanfreight Lines, Inc.,*
  2000 WL 1159283 (S.D.N.Y. 2000)..........................................................4, 5

*Misla v. CVS Pharmacy, Inc.,*
  2001 WL 637384 (S.D.N.Y. 2001).............................................................4

*Morrison v. Blitz,*
  1992 WL 75088 (S.D.N.Y. 1992)...............................................................5

*New York 10-13 Ass'n, Inc. v. City of New York,*
  2000 WL 1376101 (S.D.N.Y. 2000)............................................................5

*Pelman ex rel. Pelman v. McDonald's Corp.,*
  396 F.Supp.2d 439 (S.D.N.Y. 2005)..........................................................17

*Remsen Partners, Ltd. v. S. Mgmt. Corp.,*
  2004 WL 2210254 (S.D.N.Y. 2004)...........................................................12

*U-Neek, Inc. v. Wal-Mart Stores, Inc.,*
  47 F.Supp.2d 158 (S.D.N.Y. 2001)..........................................................15, 16

(iv)

## OTHER CASES

*Airline Exchange, Inc. v. Bag,*
  266 A.D.2d 414, 698 N.Y.S.2d 694, 695 (2nd Dep't.1999)...............................12, 13

*Alicanto, S.A. v. Woolverton,*
  129 A.D.2d 601, 514 N.Y.S.2d 96, 98 (2nd Dep't 1987)........................................13

*Interline Furniture, Inc. v. Hodor Indus., Corp.,*
  140 A.D.2d 307, 527 N.Y.S.2d 544, 545 (2nd Dep't 1988)....................................13

*Int'l Fuel & Iron Corp. v. Donner Steel Co.,*
  242 N.Y. 224, 151 N.E. 214, 215 (N.Y. 1926).....................................................13

*Kaltenbach v. Richards,*
  464 F.3d 524 (5th Cir. 2006)...........................................................................10

(v)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

PAUL KUHNE,

                Plaintiff,                07-CV-1364 (HB) (RLE)

    -against-

COHEN & SLAMOWITZ, L.L.P., and
MIDLAND FUNDING NCC-2, CORP.,

                Defendants.

-----------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Of Counsel:

    Thomas A. Leghorn
    Jay A. Wechsler

## PRELIMINARY STATEMENT

This memorandum of law is submitted by defendants, Cohen & Slamowitz, LLP ("C&S"), and Midland Funding NCC-2 Corp. ("NCC-2") in opposition to Plaintiff Paul Kuhne's ("Plaintiff") motion for summary judgment. As set forth below, Plaintiff's motion for summary judgment completely misapprehends both the letter and spirit of the Fair Debt Collection Practices Act ("FDCPA") and the local statutes of the City of New York regulating debt collection.

Plaintiff's claim that C&S and NCC-2 committed abusive debt collection practices is devoid of merit and his motion for summary judgment on this ground must be dismissed. Plaintiff's claim that General Business Law § 349 was violated by the service and filing of a debt collection lawsuit without the legal right to do so is also groundless. C&S was at all times licensed as a debt collection agency by the New York City Department of Consumer Affairs ("DCA") and NCC-2, as a passive purchaser of debt which engages in no collection activities, was not required to be licensed by the DCA.

Plaintiff's sole ground for his complaint is that NCC-2 was a debt buyer engaging in debt collection activities because it was a plaintiff in collection suits. Plaintiff further argues that NCC-2 was thus required a license as a debt collection agency by the DCA. The licensure provisions of the New York City's Administrative Code, however, are not applicable to NCC-2 because NCC-2 is a debt buyer which did not, and does not, engage in active debt collection activities. The New York City Administrative Code defines a debt collection agency as "a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another." *See* New York City

Administrative Code § 20-489. It is not NCC-2's principal business purpose to collect or attempt to collect debts and they did not do so with respect to Plaintiff.

The FDCPA is a federal statute whose terms and legislative history are distinct from the local New York City Administrative Code sections governing debt collection. The FDCPA defines a debt collector "as any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692(a)(6). The FDCPA is a far more broad and inclusive law than the Administrative Code provision. Plaintiff attempts to cloud the issue and the differences between the statutes and uses the two statutes interchangeably, using one when it fits his purpose and then tactfully using the other to make a separate point. There is a difference between a debt collector under the FDCPA and a debt collection agency under the New York City statute. For Plaintiff to argue otherwise is disingenuous.

Additionally, Plaintiff has failed to comply with Local Rule 56.1 and his motion should be denied on that basis alone.

## ARGUMENT

### POINT I

## GRANTING SUMMARY JUDGMENT TO PLAINTIFF IS INAPPROPRIATE IN THIS ACTION

The record is clear that Plaintiff has failed to establish any entitlement to summary judgment. Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law." *See* Fed.R.Civ.P. 56(c); *see also, D'Amico v. City of New York,* 132 F.3d 145,

149 (2d Cir. 1998), *cert. denied,* 524 U.S. 911, 118 S.Ct. 2075 (1998). Plaintiff has not met this

burden on any level.

The moving party bears the initial burden of showing that no genuine issue of material

fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Once the

moving party has satisfied its initial burden, the non-moving party must come forward with

"specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Plaintiff has wholly

failed to meet his initial burden of demonstrating that there is no genuine issue of material fact.

Furthermore, Defendants have demonstrated in their Motion for Summary Judgment, not only

that Plaintiff is not entitled to summary judgment but that Defendants are the parties to whom

summary judgment must be granted.

When considering a summary judgment motion, a district court "must resolve all

ambiguities and draw all reasonable inferences in favor of the party against whom summary

judgment is sought, with the burden on the moving party to demonstrate the absence of any

material factual issue genuinely in dispute." *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d

1317, 1320 (2d Cir. 1975)(citing *Adickes v. Kress & Co.,* 398 U.S. 144, 157 (1970); *United*

*States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *accord LaFond v. Gen. Physics Servs. Corp.,*

50 F.3d 165, 171 (2d Cir. 1995)(" 'The inferences to be drawn from the underlying facts

revealed in materials such as affidavits, exhibits, interrogatory answers, and depositions must be

viewed in the light most favorable to the party opposing the motion.'" (quoting *Chambers v.*

*TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir. 1994)); *Patrick v. LeFevre,* 745 F.2d 153, 158

(2d Cir. 1984). If there exists "any evidence in the record from which a reasonable inference

-3-

could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir.1996). Here, after resolving all ambiguities in favor of Defendants and granting Defendants all reasonable inferences, it is patent that Plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law. Thus, his motion should be denied.

Additionally, Plaintiff has failed to comply with Local Rule 56.1 and his motion should be denied on this basis alone. Local Rule 56.1 is designed to aid the Court in determining whether summary judgment is warranted. Local Rule 56.1 requires, *inter alia*, that "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." Since Plaintiff has failed to comply with Local Rule 56.1 his motion for summary judgment should be denied. *See Grant v. The City of New York*, 1992 WL 77562, (S.D.N.Y. 1992); *Gear, Inc. v. L.A. Gear California, Inc.*, 637 F.Supp. 1323, 1333 (S.D.N.Y.1986).

In the case at bar, a review of the docket sheet and of the motion papers served on defense counsel reveals that Plaintiff has failed to file with his notice of motion a separate, short and concise statement of the material facts as to which he contends there is no genuine issue to be tried. Accordingly, he has failed to comply with Local Civil Rule 56.1 and his motion may be denied on that basis alone. *Armstrong v. Tucker*, 2000 WL 33593292 (S.D.N.Y. 2000); *Howard v. City of New York*, 302 F.Supp.2d 256, 259 (S.D.N.Y. 2004); *Misla v. CVS Pharmacy, Inc.*, 2001 WL 637384 (S.D.N.Y. 2001); *Mediterranean Shipping Co., (USA), Inc. v. Scanfreight*

-4-

*Lines, Inc.*, 2000 WL 1159283 (S.D.N.Y. 2000); *New York 10-13 Ass'n, Inc. v. City of New York*, 2000 WL 1376101 (S.D.N.Y. 2000).

In some circumstances, the denial of a motion because of a party's failure to heed local rules of civil practice would be pointless championing of form over substance. Such is not the case here. Plaintiff's failure to set forth a "short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried", as required by Local Rule 56.1, makes it impossible for the Court and defense counsel to know what his arguments are and upon what set of undisputed facts the argument is based. His failure to set forth a statement of purportedly undisputed material facts makes it impossible to assess his entitlement to judgment as a matter of law and makes it impossible for defense counsel to adequately oppose the motion. *Morrison v. Blitz*, 1992 WL 75088 (S.D.N.Y. 1992).

In sum, Plaintiff cannot show that, as a matter of law, a license was required by NCC-2 under New York City Administrative Code § 20-490. It logically follows that Plaintiff cannot show, as a matter of law, that C&S violated the FDCPA when it filed suit in NCC-2's name.

## POINT II

## NCC-2 IS NOT A DEBT COLLECTION AGENCY UNDER THE NEW YORK CITY ADMINSITRATIVE CODE

Plaintiff's contention that NCC-2 was required to have a license is expressly refuted by the DCA, which is the agency responsible for the licensing of debt collection agencies within the City of New York. The DCA recently has spoken authoritatively on this issue and stated its position that "a debt buyer that merely purchases or acquires defaulted debt but does not actively engage in collection activities does not require a license from the Department." *See* Affidavit of Thomas A. Leghorn in support of Defendants' Motion for Summary Judgment, Exhibit "C".

-5-

Additionally, there is no evidence of any active collection activity by NCC-2 in connection with Plaintiff's debt. NCC-2 did not call Plaintiff, did not write any letter to Plaintiff, and in fact had no communications of any kind with Plaintiff. This is far from surprising in that NCC-2 has no employees. *See* Transcript of Brian Frary, p. 37, attached to the Affidavit of Thomas A. Leghorn in Support of Defendants' Motion for Summary Judgment as Exhibit "G". The Midland entity that was involved in the collection on Plaintiff's debt, Midland Credit Management, Inc. ("MCM"), has been licensed by the DCA long before the operative dates of Plaintiff's claim. *See* Affidavit of Thomas A. Leghorn in Support of Defendants' Motion for Summary Judgment, Exhibit "D". MCM is a debt collector that requires a license by the DCA, as a debt collection agency, and is so licensed. NCC-2 is a passive purchaser of debt and need not be licensed by the DCA.

NCC-2 has engaged in no collection activities and, as such, is not required to be licensed. The fact that the debt owned by NCC-2 was serviced by MCM with no collection activity by NCC-2 whatsoever does not alter this fact, contrary to what Plaintiff would like to argue. If an entity such as NCC-2, as an assignee of Plaintiff's defaulted debt, engaged in any collection activities, it would need to be licensed by the DCA. Thus there can be no liability under the FDCPA. Here, NCC-2 is the purchaser of Plaintiff's debt and did not engage in collecting Plaintiff's debt in any way, shape or manner. NCC-2 is merely the assignee of the original creditor, Citibank, and need not be licensed by the DCA.

Under New York City Administrative Code §20-489, assignees or purchasers of defaulted debts whose principal purpose is the collection of that debt, whether for itself or others, is a "debt collection agency." But NCC-2 is clearly an entity which is not encompassed by this regulation. The principal purpose of NCC-2's business is the purchase of defaulted debt for

-6-

investment purposes and not the active collection of debt. Even though Plaintiff's debt acquired by NCC-2 was in default at the time of the acquisition, NCC-2's principal purpose is not the active collection of debt, whether for itself or others. It was acquired as an investment with any collection activity to be carried out by others. Thus it is clear that NCC-2 is not a "debt collection agency" within the meaning of New York City Administrative Code § 20-489 and is not subject to the licensing provisions.

Plaintiff, in essence, is arguing that the New York City licensing statute contemplates that an entity engaged in no debt collection activities whatsoever requires a license as a debt collection agency. This argument, however, is neither supported by the evidence adduced, nor by the legislative intent of the licensing statute. All parties covered by the licensing statute have complied with the law as evidenced by the exhibits attached to the Affidavit of Thomas A. Leghorn in Support of Defendants' Motion for Summary Judgment (*See* Exhibits "B" and "D"). Cohen & Slamowitz, LLP was at all times licensed by the DCA as was MCM. NCC-2 did not require a license as it is not a debt collection agency.

Accordingly, in the complete absence of any specific evidence of direct collection activity within the City of New York by NCC-2, there was no need for NCC-2 to be licensed by the DCA. As there was no need for NCC-2 to be licensed, there can be no liability imposed on C&S for filing suit in the name of NCC-2 to collect Plaintiff's delinquent debt.

Plaintiff attempts to argue to this Court that it should disregard the authoritative letter of Marla Tepper, General Counsel of the New York City Department of Consumer Affairs. It is clear that Plaintiff is making this spurious argument because he knows that the letter is fatal to his claims. NCC-2 is a passive purchaser of debt and need not be licensed by the DCA. As explained by Marla Tepper, Esq., General Counsel of the DCA:

-7-

> A debt buyer that merely purchases or acquires defaulted debt but does note engage in collection activities itself does not require a license from the Department. Administrative Code § 20-489 defines a debt collection agency as a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be due to another. In enacting this statute, the City Council sought to curb abusive practices of debt collection agencies by requiring licensing of those entities dealing directly with the consumer public in the collection of debts. Administrative Code § 20-488. Thus, under the Administrative Code, a "debt collection agency" is an entity engaged in actively collecting or attempting to collect debts.
>
> *See* Thomas A. Leghorn Affidavit in Support of Defendants' Motion for Summary Judgment, Exhibit "C".

The New York State Court of Appeals "has made clear [that] 'the interpretation given to a regulation by an agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable.'" *See Brentwood Pain & Rehabilitation Services, P.C. v. Allstate Insurance Company*, 508 F. Supp.2d 278 (S.D.N.Y. 2007). Here, the Tepper letter is clearly not unreasonable, is not irrational and is thus entitled to deference by this Court. To countenance Plaintiff's argument would allow any person who disagreed with an administrative rule or opinion letter to request redress from the Court, even absent a showing that it is irrational or unreasonable.

The DCA gave adequate consideration to the practical considerations on the court system if its opinion letter were to be followed by the Courts. If the Courts were to follow the DCA's opinion letter, there would be fewer frivolous lawsuits under the FDCPA and those FDCPA suits with merit would proceed and give consumers the protection that the FDCPA and the DCA's regulations are designed to give.

Plaintiff is wrong in his claim that the retention by NCC-2 of any agent would constitute collection activity on the part of NCC-2. The contention that either the hiring of a law firm or

-8-

licensed collection agency would require licensing by the DCA is illogical and inconsistent with the legislative intent of the FDCPA and the DCA. Preliminarily, it is worth noting that Plaintiff does not specify what acts committed by MCM or C&S with regard to NCC-2 would vicariously give rise to a requirement for NCC-2 to be licensed. Both MCM and C&S are duly licensed and were so licensed during the time period at issue here. Plaintiff seems to argue that even though the "agent" is licensed to engage in debt collection activities of purchased debt, the owner (NCC-2) would have to be licensed as well if it were ever to seek judicial intervention to enforce its interest in the debt, regardless of whether the agent was pursuing the collection or not. Such an interpretation would require double licensure. There is no rational explanation as to why the legislature would require double licensure to achieve the legislative goals. As long as the entity actively and actually engaging in the collection is duly licensed in conformity with the statute, the legislative intent is met, even though the purchaser of the debt is not licensed. As addressed more fully below, the legislative intent of the DCA was to address the interaction between debt collection agencies and the public. As the Tepper letter noted, the DCA regulations have no application to a passive debt buyer such as NCC-2.

## POINT III

### PLAINTIFF'S CLAIM THAT LITIGATION BY ITSELF CONSTITUTES COLLECTION ACTIVITY IS MISGUIDED

Plaintiff argues that litigation is a form of debt collection governed by the FDCPA. This is a true statement of law within certain parameters of the law. Plaintiff, however is attempting to cloud the distinction between a "debt collector" under the FDCPA and a "debt collection agency" as defined by the DCA. In order for Plaintiff to prevail on his claims, he must show that NCC-2 is a **debt collection agency** as defined by the DCA, not that it is a debt collector under the FDCPA. It is quite clear that NCC-2 is not a debt collection agency as defined by the DCA.

-9-

Thus, when C&S, a licensed debt collection agency in New York, initiated a lawsuit in Civil Court to collect on Plaintiff's delinquent debt, there was no violation of the FDCPA.

Plaintiff cites to *Heinz v. Jenkins*, 514 U.S. 291 (1995) to stand for the proposition that filing suit in court is a debt collection activity. However, that case applied the facts to the FDCPA and not a concomitant local licensing statute as is present here. The FDCPA is clearly distinct from the licensure statute of the DCA. Defendants are not arguing whether NCC-2 and C&S are debt collectors under the FDCPA but, rather, that NCC-2 is not a debt collection agency under the DCA regulations and as such is not required to be licensed. In *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006), the Court held that *Heinz* determined that lawyers engaged in litigation are exempt from the FDCPA, unless they fulfill the definition of a debt collector beyond the act of simply filing suit. The *Kaltenbach* Court made it clear that whether an entity qualifies as a debt collector under the FDCPA is an issue that requires a rigorous analysis and is not subject to a facile interpretation as Plaintiff claims.

## POINT IV

### DEFENDANTS DID NOT VIOLATE THE FDCPA

Plaintiff argues that Defendants violated the FDCPA because NCC-2 is not licensed as a debt collection agency by the DCA and, as a result, C&S violated the FDCPA by filing suit in NCC-2's name in the Civil Court of The City of New York to collect Plaintiff's delinquent debt.

Under Administrative Code §20-488, there is a "legislative declaration" expounding on the need for debt collection agencies to be licensed by the DCA.

> The council hereby finds the presence of consumer related problems with respect to the practices of debt collection agencies whose sole concern is the collection of debts owed to their clients. While the majority of those engaged in this business are honest and ethical in their dealings, there is a minority of unscrupulous collection agencies in operation that

> practice abusive tactics such as threatening delinquent debtors,
> or calling such people at outrageous times of the night. These
> actions constitute tactics which would shock the conscience of
> ordinary people. Due to the sensitive nature of the information
> used in the course of such agency's everyday business, and the
> vulnerable position consumers find themselves in when dealing
> with these agencies, it is incumbent upon this council to protect
> the interests, reputations and fiscal well-being of the citizens of
> this city against those agencies who would abuse the privilege
> of operation. It is herein declared that the city should license
> debt collection agencies.

With the legislative intent of the City of New York clearly articulated, NCC-2 is not a collection agency at all. Thus, there can be no violation of the FDCPA.

Plaintiff asserts that the failure of NCC-2 to be licensed and C&S filing suit in its name violates 15 U.S.C. § 1692e(5) which outlaws "the threat to take action that cannot legally be taken or that is not intended to be taken." This subsection prohibits false threats of legal action such as occurred in *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir. 1993) where a dunning letter falsely claimed that a creditor gave a debt collection agency authority to initiate legal proceedings. The Second Circuit held that the false threat violated 15 U.S.C. § 1692e(5), where the collection agency conceded that its client did not give it authority to file a suit against the Plaintiff/debtor. Here, there were no threats to take actions that could not legally be taken and no threats to take actions that were not intended to be taken.

In this case, C&S filed suit in the State of New York in the name of NCC-2 against Plaintiff seeking collection of a debt. The filing of the lawsuit can not be deemed a deceptive or misleading practice in violation of 15 U.S.C. § 1692e(5), given the fact that NCC-2 is not required to register in New York City as provided for in N.Y.Bus.Corp.L. § 1312(a) as a precondition to using its courts for enforcement of its claims.

-11-

Plaintiff's motion demonstrates counsel's confusion as to the requirements for a plaintiff to properly maintain an action under the Fair Debt Collection Practices Act. Plaintiff has correctly pointed out that NCC-2 is not licensed by the DCA. Plaintiff then goes on to erroneously conclude that NCC-2's failure to obtain such a business license violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(5) and 1692e(9). Controlling New York law does not support such an argument.

A corporation is "doing business" in New York for the purposes of section 1312, if its business activities are " 'substantial ... permanent, continuous, and regular.'" *Remsen Partners, Ltd. v. S. Mgmt. Corp.*, 2004 WL 2210254 (S.D.N.Y. 2004)(quoting *A.I. Int'l Corporate Holdings, Inc. v. Surgicare, Inc.*, 2003 WL 22705128, (S.D.N.Y. 2003). "Absent proof establishing that a foreign corporation is doing business in New York, it is presumed that it is doing business in its state of incorporation and not in New York." *Carvalho v. Mel S. Harris & Assocs.*, 2004 WL 1555193 (E.D.N.Y. 2004)(citing *Airline Exchange, Inc. v. Bag,* 266 A.D.2d 414, 698 N.Y.S.2d 694, 695 (2nd Dep't.1999)). A copy of the *Carvalho* decision is attached to the Affidavit of Thomas A. Leghorn in Opposition to Plaintiff's Motion for Summary Judgment as Exhibit "A".

Further, the uncontroverted facts in the record indicate NCC-2 is not doing business in New York: NCC-2 has no office, employees, sales agents, or real property in New York. In sum, there exists no evidence in the record from which a reasonable inference could be drawn in favor of Plaintiff on this material issue of fact.

In *Carvalho v. Mel S. Harris and Associates, LLC, and Great Seneca Financial Corp.*, 2004 WL 15555193 (E.D.N.Y 2004) Plaintiff brought suit for violations of the FDCPA. Plaintiff in that case made very similar allegations as Kuhne makes in this case; that Great Seneca filed

-12-

suit in the State of New York without obtaining a license to do business in this state and that such action violated FDCPA's prohibition on "the threat to take action that cannot legally be taken," 15 U.S.C. § 1692e(5), and "the use of any false representation or deceptive means in an attempt to collect any debt," 15 U.S.C. § 1692e(10).

Judge Jack Weinstein held in *Carvalho* that section 1312 of the Business Corporation Law precludes a foreign corporation from maintaining a New York action, if it is doing business in New York without the required authorization. *Id. See also* Bus. Corp. Law § 1312(a). In order for a foreign corporation to be found to be doing business in New York, however, it must have engaged in continuous, systematic and regular activity in the state. *Id. See also Int'l Fuel & Iron Corp. v. Donner Steel Co.,* 242 N.Y. 224, 151 N.E. 214, 215 (N.Y. 1926); *Interline Furniture, Inc. v. Hodor Indus., Corp.,* 140 A.D. 2d 307, 527 N.Y.S.2d 544, 545 (2nd Dep't 1988). A single or isolated act or activities which are merely incidental to the corporation's business in interstate or international commerce do not constitute doing business for such purpose. *Id. See also Int'l Fuel & Iron Corp.,* 151 N.E. at 215; *Interline Furniture, Inc.,* 527 N.Y.S.2d at 545; *Alicanto, S.A. v. Woolverton,* 129 A.D.2d 601, 514 N.Y.S.2d 96, 98 (2nd Dep't 1987). The same is true as to the mere retention of a law firm in the state. *Id. See also Azuma N.V. v. Sinks,* 646 F.Supp. 122, 125 (S.D.N.Y.1986). Absent proof establishing that a foreign corporation is doing business in New York, it is presumed that it is doing business in its state of incorporation and not in New York. *Id. See also Airline Exchange, Inc. v. Bag,* 266 A.D.2d 414, 698 N.Y.S.2d 694, 695 (2nd Dep't.1999).

Plaintiff has failed to overcome the presumption that NCC-2 is not required to be licensed in New York as a collection agency. Plaintiff's sole allegation is that NCC-2 has brought hundreds of collection actions in this state and that this constitutes debt collection activities. The

-13-

retention of a law firm and the maintenance of legal action in New York do not constitute the type of regular, systematic and continuous activity required by Section 1312 of the Business Corporation Law.

Judge Weinstein astutely noted that "[g]iven the national character of much of American commerce, this type of parochial and hypertechnical basis for suit under the Fair Debt Collections Practices Act should not be encouraged. It does nothing to really protect consumers against overreaching creditors and burdens the federal courts unnecessarily. *See Carvalho v. Mel S. Harris and Associates, LLC*, 2004 WL 1555193 (E.D.N.Y. 2004). This prophetic statement is quite applicable to the case at bar. Plaintiff's claims and the manner in which he would have this Court interpret the FDCPA is "parochial and hypertechnical" While the FDCPA and DCA regulations are laudatory statutes that are designed to protect consumers, Plaintiff's lawsuit is precisely the type of case that "does nothing to really protect consumers against overreaching creditors and burdens the federal courts unnecessarily", as Judge Weinstein cautioned.

Here, as in the cases cited above, NCC-2 is a foreign corporation that is not doing business in New York. The plaintiff has failed to come forward with any proof of NCC-2's alleged conduct of business within the State. In this case, NCC-2, through its attorneys, properly filed suit in the State of New York against Plaintiff seeking collection of a debt. The mere filing of a lawsuit by a foreign corporation, that was never doing business in New York, is not a violation of § 1312(a) of the N.Y. Bus.Corp.L. or the Fair Debt Collection Practices Act.

Additionally, Plaintiff's interpretation of the DCA would violate the Commerce Clause, Art. I, § 8, cl. 3 of the Constitution. Since NCC-2 conducts no business in New York, such an interpretation would operate extraterritorially by regulating commerce wholly beyond New York's borders.

If this Court were to countenance Plaintiff's interpretation of the New York City statute (i.e. that NCC-2 requires a license by the DCA), such an interpretation would violate the Commerce Clause because it discriminates against interstate commerce, thus violating the dormant commerce clause. *See Town of Southold v. Town of East Hampton,* 477 F.3d 38, 47 (2d Cir.2007). NCC-2 does not conduct business in New York City or anywhere in New York State and such an interpretation would have a chilling effect on interstate commerce. Plaintiff's interpretation of the DCA laws would clearly discriminate against interstate commerce in favor of intrastate commerce. Plaintiff's interpretation would render the local statute per se invalid.

## POINT V

## THERE IS NO VIOLATION OF GBL § 349

Section 349 of the General Business Law provides:

Deceptive acts and practices unlawful

> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state     are     hereby     declared     unlawful.

Plaintiff claims that by serving and filing the lawsuit against him without a legal right to do so, Defendants violated the statute. Plaintiff further argues that Defendants misrepresented that they had the legal right to do so. Finally Plaintiff argues that he sustained an injury as a result of this.

To state a claim for deceptive practices under New York's General Business Law, a plaintiff must show: (1) that the act or practice was consumer-oriented; (2) that the act or practice was misleading in a material respect; and (3) that the plaintiff was injured as a result of the deceptive practice or act. *In re Evergreen Mut. Funds Fee Litigation*, 423 F.Supp.2d 249 (S.D.N.Y. 2006). To prevail on a deceptive trade claim, a plaintiff must also show that the gravamen of the complaint is consumer injury or harm to the public interest. *U-Neek, Inc. v.*

-15-

*Wal-Mart Stores, Inc.*, 2001, 147 F.Supp.2d 158 (S.D.N.Y. 2001); *Conboy v. AT & T Corp.*, 84 F.Supp.2d 492 (S.D.N.Y. 2000). NCC-2 not being licensed by the DCA is the gravamen of Plaintiff's complaint. There can be no reasonable argument that such a lack of a license is misleading in a material way. Even assuming, *arguendo* that it was misleading, there can be no claim that Plaintiff was injured as a result of such an act. Indeed, Plaintiff has admitted that he was never aware of the fact that NCC-2 was not licensed by the DCA (See Kuhne Transcript p. 12, attached to the Affidavit of Thomas A. Leghorn in Support of Defendants' Motion for Summary Judgment as Exhibit "E") and that he is not presently aware of same. Additionally, Plaintiff has admitted that he is not pursuing damages as a result of his emotional distress and anxiety (See Kuhne Transcript p. 24-28, Affidavit of Thomas A. Leghorn in Support of Defendants' Motion for Summary Judgment as Exhibit "E") contrary to what he states in his motion for summary judgment. Finally, Plaintiff's complaint is not one for a consumer injury, as he has not been injured by the fact that NCC-2 was not licensed by the DCA, and there is no harm to the public interest. The public clearly does not need to be protected from the situation that occurred here. Plaintiff defaulted on his debt, it was purchased by NCC-2, which forwarded it to MCM (a licensed debt collector) for collection, which retained C&S to attempt to collect the debt by whatever means necessary based on their professional judgment. Not only is there no violation of the law here, but the public does not need to be protected from this situation.

To violate New York's deceptive business practices statute, defendant must mislead plaintiff in some material way. *Broder v. Cablevision Systems Corp.*, 329 F.Supp.2d 551, affirmed 418 F.3d 187 (2nd Cir. 2005). Plaintiff has not been misled here simply because he is unaware of the act upon which he bases his claim under GBL § 349, namely that NCC-2 is not licensed by the DCA.

-16-

For purposes of New York consumer protection laws, deceptive acts or practices have an objective definition, whereby deceptive acts or practices, which may be acts or omissions, are limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances. *Leider v. Ralfe*, 387 F.Supp.2d 283 (S.D.N.Y. 2005, J. Baer). Here, there are no acts likely to mislead a reasonable consumer acting reasonably under the circumstances.

Under New York's consumer protection statute which proscribes deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in state, the standard for whether an act or practice is misleading is objective, requiring a showing that a reasonable consumer would have been misled by defendant's conduct. *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.Supp.2d 439 (S.D.N.Y. 2005). Plaintiff cannot show that a reasonable consumer would have been mislead by NCC-2's or C&S's conduct.

-17-

## CONCLUSION

WHEREFORE, Defendants Cohen & Slamowitz, LLP  and Midland Funding NCC-2, Corp. respectfully request that the Court enter an Order denying Plaintiff's motion for summary judgment, as it has not been demonstrated that Plaintiff is entitled to a judgment as a matter of law.  Defendants further request that the Court enter an order granting Cohen & Slamowitz, LLP's and Midland Funding NCC-2 Corp.'s motion for summary judgment and granting Defendants such other and further relief that the Court deems necessary and proper.

Dated:     White Plains, New York
           January 18, 2008

                              Respectfully submitted,

                              WILSON, ELSER, MOSKOWITZ,
                              EDELMAN & DICKER LLP


                              By: _____
                                  Thomas A. Leghorn, Esq.
                                  Jay A. Wechsler, Esq.
                                  Attorneys for Defendants
                                  3 Gannett Drive
                                  White Plains, New York 10604
                                  (914) 323-7000
                                  File No. 00295.12368

-18-

1856169.1