UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PAUL KUHNE,

                      Plaintiff,

        - against -

COHEN & SLAMOWITZ, LLP, and
MIDLAND FUNDING NCC-2 CORP.,

                     Defendants.
------------------------------------------------------------------x

07 Civ. 1364 (HB)

**OPINION & ORDER**

**Hon. HAROLD BAER, JR., District Judge**[*]**:**

      Plaintiff Paul Kuhne ("Kuhne" or "Plaintiff") and Defendants Cohen & Slamowitz, LLP ("C&S") and Midland Funding NCC-2 Corp. ("NCC-2" and, together with C&S, "Defendants") each has moved this Court for summary judgment. The issue is whether NCC-2's failure to hold a New York City debt collection license, and C&S's knowledge of this fact, violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, (the "FDCPA") and New York General Business Law (the "GBL") § 349. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

### I. FACTUAL BACKGROUND

      The following facts are not disputed. At all times relevant to this dispute, NCC-2 was a wholly owned subsidiary of Encore Capital Group Inc. ("Encore"), a public company. Decl. of Brian L. Bromberg (Jan. 7, 2008) ("Bromberg Decl.") Exs. G, S. Encore is a Delaware holding company whose assets consist of investments in its subsidiaries. Through its subsidiaries, Encore purchases, manages and collects charged-off consumer receivable portfolios, which it acquires at deep discounts from face value and which consist largely of defaulted credit card debt. Bromberg Decl. Ex. G. For more than 16 years, Encore has purchased such defaulted debt for its own account. *Id.*

---

[*] Ian G. Nanos, a spring 2008 intern in my Chambers, and currently a third-year law student at Brooklyn Law School, provided research assistance in conjunction with this Opinion & Order.

1

Defendant NCC-2, a subsidiary of Encore, is also a holding company. Its assets consist of portfolios of charged-off consumer debt, but it has no employees or operations. Aff. of Thomas A. Leghorn (Jan. 7, 2008) ("Leghorn Aff.") Ex. G. While NCC-2 itself has no direct contact with debtors, another Encore subsidiary, Midland Credit Management, Inc. ("MCM"), collects NCC-2's debts pursuant to a Servicing Agreement between NCC-2 and MCM. Bromberg Decl. Ex. K ("Servicing Agreement"). To that end, MCM sends debt collection letters and other communications to the debtor and, when unsuccessful, is authorized to hire counsel and commence litigation "in the name of" NCC-2. Servicing Agreement § 2.3. MCM is licensed as a debt collection agency by the New York City Department of Consumer Affairs (the "DCA"), but NCC-2 is not. Leghorn Aff. Ex. D. While the complicated corporate set-up might lead one to suggest that something suspicious is behind all these machinations, they appear to be lawful.

After Plaintiff Kuhne failed to pay his consumer debt to Citibank/Associates, NCC-2 purchased Kuhne's defaulted debt from Citibank. Def.s' Mem. in Support of Mot. Summ. J. ("Def.'s Mem.") 2. NCC-2 did not have any communication with Kuhne. Leghorn Aff. Ex. S. Pursuant to the Servicing Agreement, MCM tried to collect the debt and when its communications proved unsuccessful it retained counsel, Defendant C&S, which holds a New York City debt collection license. Def.'s Mem. 4. C&S filed a lawsuit in the name of NCC-2 against Kuhne in New York City Civil Court to recover the debt, but ultimately discontinued the suit with prejudice. Bromberg Decl. Ex. H. A few days later Kuhne filed the instant case.

## II. STANDARD OF REVIEW

A court will not grant a motion for summary judgment unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986). In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). Whether a fact is "material" is determined by the substantive law defining the claims. *Liberty Lobby*, 477 U.S. at 248. However, a disputed issue of material fact alone is insufficient to deny a motion for summary judgment; the disputed issue must be "material to the outcome of the litigation,"

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Kuhne's claim that Defendants violated the FDCPA and GBL § 349 rests entirely on his assertion that the New York City debt licensing statute required NCC-2 to be licensed before it could sue to collect a debt. The parties agree that NCC-2 did not hold such a license, while MCM and Defendant C&S did. This Court finds on the facts presented here, the weight of authority in this Circuit and the purpose behind the New York City licensing statute and the FDCPA, that NCC-2 was not required to hold a license.

A.     **Purpose of the New York City Debt Licensing Statute and the FDCPA**

The New York City Administrative Code's subchapter on the licensing of Debt Collection Agencies includes the following "legislative declaration":

> The [New York City] council hereby finds the presence of consumer related problems with respect to the practices of debt collection agencies . . . . [T]here is a minority of unscrupulous collection agencies in operation that practice abusive tactics such as *threatening delinquent debtors, or calling such people at outrageous times of the night*. These actions constitute tactics which would *shock the conscience of ordinary people* . . . . [I]t is incumbent upon this council to protect the interests, reputations and fiscal well-being of the citizens of this city against those agencies who would abuse their privilege of operation. It is herein declared that the city should license debt collection agencies.

New York City Admin. Code ("Admin. Code") § 20-488 (emphasis added). The FDCPA was designed to address the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of personal privacy." FDCPA, 15 U.S.C. § 1692(a). Both the New York City and federal statutes are aimed at preventing debt collectors from abusing the consumer public.

Under the New York City Administrative Code, a "debt collection agency" is "a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another." Admin. Code § 20-489(a). In New York City, "[i]t shall be unlawful for any person to act as a debt collection agency without first having obtained a license in accordance with the provisions of this subchapter, and without first being in compliance with all other applicable law, rules and regulations." Admin. Code § 20-

490.

The DCA is the administrative agency responsible for regulating this licensing regime, and debt collection agencies must apply to the DCA to obtain a license and pay an annual fee. Admin. Code §§ 20-491(b), -492. The DCA issues interpretive statements concerning licensing requirements and initiates administrative proceedings against entities that run afoul of the licensing statute.

**B.    Cases Cited by Plaintiff Do Not Require NCC-2 to Be Licensed**

Kuhne argues that NCC-2 is a debt collection agency because it purchases defaulted consumer debts and then files lawsuits to collect from consumers. Pl.'s Mem. in Support of Mot. Summ. J. 12-13. To support its claim that "[t]he act of suing Plaintiff on the debt is, in itself, a collection activity that shows NCC-2 is a debt collector," and thus required NCC-2 to be licensed, Kuhne relies primarily on the DCA's July 24, 2006 administrative decision and February 23, 2007 appeal determination in *Department of Consumer Affairs v. Asset Acceptance, LLC,* Violation No. PL1044927 ("*Asset Acceptance*")[1] and four New York City Civil Court cases: *Great Seneca Financial Corp. v. Dowd,* No. 12627-05 (N.Y. Civ. Ct., Richmond County, Decisions dated Feb. 15, 2007, Nov. 8, 2007, Jan. 24, 2008); *Rushmore Recoveries, XI, LLC., v. Morningstar,* slip op., No. 19884-06 (N.Y. Civ. Ct., N.Y. County, July 17, 2007)[2]; *PRA III, LLC v. Dowell*, 15 Misc. 3d 1135(A) (N.Y. Civ. Ct., Richmond County, 2007); *Centurion Capital Corp. v. Druce*, 14 Misc. 3d 564 (N.Y. Civ. Ct., N.Y. County, 2006).

As none of the cases cited by Plaintiff are on point, a brief chronological review of the authorities is warranted. In both *Asset Acceptance* and *Centurion*, the issue was whether the Administrative Code's definition of "debt collection agency" includes an entity that collects a debt owed to itself, rather than "to another." *Asset Acceptance*, Violation No. PL1044927 at 9 (concluding that "collecting charged-off consumer debts for itself . . . requires a 'debt collection agency' Departmental license"); *Centurion*, 14 Misc. 3d at 567-68 (holding that definition of "debt collection agency" includes "entities which collect defaulted debt, whether or not the debt they collect is due to themselves or others"). In neither case, however, did the adjudicator examine what types of activities constitute debt collection, while, here, this Court must determine whether filing a lawsuit, with nothing more, requires a debt collection license.

---

[1] Bromberg Decl. Exs. N (DCA's Decision and Order) and O (DCA's Appeal Determination).
[2] Bromberg Decl. Ex. Q.

### *The DCA's Interpretive Letter*

On March 7, 2007, the DCA's General Counsel, Marla Tepper, issued an interpretive letter in response to a local trade group's request for clarification of the licensing requirements. Bromberg Decl. Ex. P ("Tepper letter"). The DCA's General Counsel repeated the conclusions reached in *Asset Acceptance* and *Centurion* that "a purchaser of defaulted debt whose principal purpose is the collection of that debt, whether for itself or others, is a 'debt collection agency.'" *Id.*

The General Counsel goes on to say "[a] debt buyer that merely purchases or acquires defaulted debt *but does not engage in collection activities itself* does not require a license from the Department." *Id.* (emphasis added). The letter explains that the licensing statute's purpose is to "curb abusive practices of debt collection agencies by requiring a licensing of those entities *dealing directly with the consumer public in the collection of debts*," and observes that "activities traditionally associated with debt collection" include "sending demand letters (dunning notices) or making collection telephone calls to consumers." *Id.* (emphasis added). An entity is regulated as a "debt collection agency" when it deals directly with the consumer public.

Kuhne argues that the Tepper letter is not persuasive. However, as this district has observed, the New York State Court of Appeals "has made clear [that] 'the interpretation given to a regulation by an agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable.'" *See Brentwood Pain & Rehabilitation Servs., P.C. v. Allstate Ins. Co.,* 508 F. Supp. 2d 278, 290 (S.D.N.Y. 2007) (internal citations omitted). Here, the DCA promulgates the New York City licensing statute on its web site and is responsible for its administration. *See also National Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2537-38 (2007) ("An agency's interpretation of the meaning of its own regulations is entitled to deference unless plainly erroneous or inconsistent with the regulation.") (internal quotation marks and citation omitted).

The Tepper letter, while not binding on me, is persuasive. The Supreme Court in *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), held that "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference" but nevertheless are entitled to "some deference" and "respect." *Id.* (quoting *Reno v. Koray,* 515 U.S. 50, 61 (1995) and *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944)).

*Case Law after the Tepper Letter*

The New York City Civil Court in *PRA III,* upon which Plaintiff relies, repeated the *Asset Acceptance* and *Centurion* holdings that "[e]ntities . . . which purchase defaulted debt and collect the debt for *themselves* are debt collectors." 15 Misc. 3d at 1135(A) (emphasis added). While this sounds reasonable on its face, none of the cases addressed what activity or how the role the parties play should be interpreted. *Id.*

*Rushmore*, upon which Plaintiff relies, is relevant but can be distinguished. In that case, the debt purchaser, like NCC-2, had "no dealings with the public" and forwarded purchased debt to its attorneys for collection. No. 19884-06 at 2. The New York City Civil Court dismissed the debt purchaser's lawsuit against the debtor because the debt purchaser was not licensed. The court found that the debt purchaser was "a debt collection agency within the meaning of New York City Administrative Code § 20-489 because the debt . . . was in default at the time of acquisition and because plaintiff's principal purpose is debt collection." *Id.* The court did not mention the Tepper letter. Even so, the case is distinguishable from the instant case because NCC-2 was insulated from the license requirement not only by its legal counsel, C&S, which was licensed, but also by its sister subsidiary, MCM, which was licensed and performed all debt collection activity, as defined in the Administrative Code and the supporting legislative reasoning, including the retention of C&S to bring a debt collection lawsuit in NCC-2's name.

*Great Seneca,* like the other cases relied upon by Plaintiff, was a suit brought to collect a debt purchased in default. After the court initially denied the debt purchaser's motion for summary judgment because it failed to plead it was licensed, No. 12627-05 (Feb. 15, 2007 Decision), the court reconsidered the motion and after reviewing the Tepper letter found that the debt purchaser had raised a question of fact as to whether it engaged in collection activities, No. 12627-05 (Nov. 8, 2007 Decision). Ultimately, however, because the debt purchaser failed to produce "a witness with knowledge of [the debt purchaser's] procedures," as ordered by the court, the court found "[t]he presumption is that the plaintiff is a debt collector and must be licensed" and again denied the debt purchaser's motion for summary judgment. No. 12627-05 (Jan. 24, 2008 Decision). Here, however, NCC-2 engaged in no activity other than purchasing the defaulted debt and being a plaintiff in the New York City Civil Court action against Kuhne.

C.  **Case Law Supports Defendants' Position that License Was Not Required**

In arguing that NCC-2 was not required to be licensed, Defendants rely principally on

another New York City Civil Court case, *MRC Receivables Corp. v. Morales*, slip op., No. 64334-06 (N.Y. Civ. Ct., Bronx County, May 7, 2007).[3]  In that case, the debtor moved to dismiss the debt purchaser's collection lawsuit because it was not licensed. *Id.* at 2.  The court found "not persuasive" the debtor's argument that the Tepper letter was "informal and not binding" and denied the motion to dismiss because there was "no showing by the defendant that the plaintiff . . . engaged in collection activities sufficient to require plaintiff to obtain a license from the [DCA]." *Id.*

Recent case law in this Circuit has applied the New York City licensing requirement to a debt purchaser that dealt directly with the consumer public. *See Williams v. Goldman & Steinberg, Inc.,* No. CV03-2132, 2006 WL 2053715, at *1 (E.D.N.Y. July 21, 2006) (finding "a violation of the FDCPA because the defendant did not have a license when it sent the Collection Letter to a New York City resident").  Here, however, NCC-2 had no contact with the consumer.

### D.    NCC-2 Was Not Required to Be Licensed

All debt collection activities and the filing and prosecution of the Civil Court lawsuit were carried out by licensed entities, MCM and Defendant C&S.  In light of the legislative intent, the case law, the administrative interpretation embodied in the Tepper letter and Encore's corporate structure, the mere commencement of a lawsuit in the name of a holding company with no employees does not mandate application of the New York City licensing regime.  That event simply does not "shock the conscience."  *See* Admin. Code § 20-488.  To require NCC-2 to be licensed, when it had no direct contact with the consumer, would run afoul of the purpose of the New York City licensing statute and the FDCPA, which are aimed at preventing abusive collection practices.  NCC-2 did not engage in any collection activities and was thus not required to be licensed.[4]

Moreover, requiring NCC-2 to hold a license would not address the policy consideration expressed by Plaintiff's counsel during oral argument.  *See* Tr. 5:22-9:14.  Specifically, Plaintiff's counsel lamented that debt buyers, such as NCC-2, often enter into forbearance agreements that permit debtors to pay only half of their debt, for example, but then sell the other

---

[3] Bromberg Decl. Ex. R.

[4] Kuhne's alternative argument that NCC-2 was required to hold a debt collection license because it engaged agents to collect its debts is without merit.  If this were the case, any creditor that hires a debt collector in New York City would need to be licensed.  Further, I need not reach Defendants' argument that Kuhne's interpretation of the New York licensing statute would violate the "dormant commerce clause" of the United States Constitution.

half of the debt to another debt collector, which itself tries to collect, leading to a debt purchasing "mill." This may be so, but it is of little consequence here. Plaintiff has not alleged that NCC-2 seeks to resell the debt owed by Kuhne. The narrow issue here is whether NCC-2 was required to be licensed in order to be a plaintiff in the Civil Court action.

## IV. CONCLUSION

Because I find that NCC-2 was not required to be licensed, and because Plaintiff's FDCPA and GBL claims depend entirely on its assertion that NCC-2 was so required, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED. Defendants' request for attorneys' fees and costs is hereby DENIED because this Court finds that Plaintiff's action was not brought in bad faith or for the purpose of harassment.

The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**
New York, New York
March 5, 2008

_____
U.S.D.J.

8